10 CV 1370 (SLT)(JO)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★  AUG 0 3 2012  ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JAMAAL RUSS

                                        Plaintiff,


                    -against-


DARRELL CHAVERS,

                                        Defendant.


PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
HIS OPPOSED MOTION FOR DEFENDANT'S SUMMARY JUDGEMENT


JAMAAL RUSS
PRO SE PLAINTIFF
5812 Summerglen Lane
College Park Georgia 30349
404-259-5053

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

JAMAAL RUSS

                              Plaintiff,

                                             PLAINTIFF'S
                                             MEMORANDUM OF LAW IN
                                             SUPPORT OF HIS OPPOSED
                                             MOTION FOR SUMMARY JUDGEMENT


               -against-

                                             10 CV 1370 (SLT)(JO)

DARRELL CHAVERS,
                              Defendant.

-------------------------------------------------------- X


## PRELIMINARY STATEMENT

                    Defendant Detective Chavers now moves for summary
judgement on all the foregoing claims pursuant to Rule 56 of the Fedral Rules of
Civil Procedure on the grounds that: (1) plaintiff's false arrest claim should be dismissed because
there was probable cause for his arrest;  (2) plaintiff's malicious prosecution claim
should be dismissed because there was probable cause for his prosecution and plaintiff was
indicted by a grand jury; (3) Detective Chavers is entitled to qualified immunity; and  (4) any
state law
claims must be dismissed because plaintiff failed to comply with conditions precedent to suit.
Accordingly, defendant respectfully submits that the Court should grant defendant's motion for
summary
judgement and dismiss plaintiff's complaint in its entirely shall be denied.

                    Plaintiff Jamaal Russ request Motion be denied, plaintiff Russ
brings this action pursuant to 42 U.S.C. 1983
against defendant Darrell Chavers alleging violations of his constitutional rights under the Fourth,
Fifth and Fourteenth Amendments, and under any applicable state laws. Specifically, plaintiff
alleges that he was falsely arrested and maliciously prosecuted stemming from an incident that
occurred on august 22, 2007.

                    On March 14, 2008, Plaintiff was arrested by Defendant Chavers.
On March 13, 2008 Chavers obtained an Arrest Warrant approximately 9 months after the
investigation.
During said investigation shooting victim clearly was not cooperative. Absent of a complaining
witness the defendant Chavers step out of bounds of his official capacity and became the
complainant to obtain an Arrest Warrant from Judge John Wilson in New York City Kings County
Criminal Court on March 13, 2008. Defendant was not given sufficient evidence that plaintiff did
shoot the victim, Chavers conspired with reckless disregards for the truth to maliciously
prosecute plaintiff by initiating false arrest and presenting false statements from victim, to a judge

in order to feign probable cause for an arrest warrant.  Plaintiff contends that the  arrest warrant was obtained through conspiracy, fraud, and misleading information. Franks V. Delaware, 438 U.S. 154

At the time of the Grand Jury proceedings the shooting victim again clearly was not any where to be found, Chavers continued the conspiracy to maliciously prosecute plaintiff by committing fraud, perjury, and misleading the Grand Jury in his testimony. See Exibit H and C. The Prosecuters Grand Jury presentation consists of no complainant but only a witness who did not see the shooting. A reasonably objective prosecutor would have known that no probable cause was evident. The defendant fashioned a corrupted evidence to feign cause to prosecute. Plaintiff contends that the information and/or indictment was obtained thru conspiracy, fraud and misleading information. During the criminal trial defense moved for a mistrial based on Chavers false statement while testifying for the people. Defense argues that the statement actually IMPEACHED the prosecutor's own witness (Tyron Jordan the c/w) who testified immediately pior to the Detective. Chavers again tried to submit false statements an mislead the jury by committing fraud an perjury. The courts denies defense motion, however the judge honorable john G. Ingram did promise to give further curative instruction to the jury if the defense requested it. See plaintiff exhibit L NYC 89- 90

STATEMENT OF FACTS

EXHIBIT A:
Statement Number 2 Is Being Disputed:
- "*The Complaint alleges, inter, alia, claims for false arrest and malicious prosecution stemming from plaintiff's*
*March 15, 2008 arrest in connection with a shooting, and his subsequent prosecution. Plaintiff was ultimately acquitted on March 20, 2009.*"

Exhibit Shows: The Prisoner Movement Slip states that I (Jamaal Russ) the prisoner was arrested on March 14, 2008.

EXHIBIT B:
Statement Number 6 Is Being Disputed:
- "*On January 19, 2012, the Court denied plaintiff's motion to file his Amended Complaint.*"

Exhibit Shows: The Court submitted a report an recommendation on December 14, 2011 an on January 19, 2012 a Memorandum and order adopting
report an recommendations

EXHIBIT C:
Statement Number 9, 10 and 11 Is Being Disputed:
- On August 22, 2007, Detective Chavers went to Brookdale Hospital and interviewed the shooting victim Tyrone Jordan.
- Jordan said a dark-skinned male with a blue hoody named "Black" shot him, and that he believes "Black"
resides at 301 Sutter Avenue.
- When asked why he was shot, Jordan explained that the other buildings in the area were feuding.

Exhibit Shows: Grand Jury Synopsis Sheet States That: Acting Officer interviewed complaining witness in the hospital, but the complaining witness would not cooperate. Detective Chavers grand jury testimony states Question: where else did you go that day as part of this investigation ? A: I went to Brookdale hospital. Q: who did you speak to ? A: the gunshot victim Tyrone Jordan. Q: Did Mr. Tyrone Jordan tell you what happened ? A: yes, he did. it is very unclear if Defendant ever obtained a statement from witness or did Chavers falsified statements an recorded his own encounter of the incident to establish probable.( Also see Exhibit "H")

EXHIBIT D:
Statement Number 13 Is Being Disputed:
- Nesbitt said he saw "Black" wearing a blue hoody, come around the victim and shoot him.

Exhibit Shows: A Grand Jury Statement, Nesbitt States on pages 7 (line 6) and Page 8 (Line 10) he seen Jamaal Russ, Not "Black"; which contradicts what Nesbitt's statement was to Detective Chavers. There was no description mentioned.
- On Page 7 (Line 25) Nesbitt was asked "*Tell us what you saw*" to Page 8 (Line 5) Nesbitt Sates: "I seen him -- him raise the gun, shot the individual. The individual, *I don't know his name, but he is in my building, which is 335 Sutter Avenue. I seen the individual collapse on the side of my building.*

EXHIBIT E:
Statement Number 14 Is Being Disputed:
 • Nesbitt viewed a photographic array and identified the shooter as the individual in position 1 as "Black".

Exhibit Shows: A Photo Array was conducted on August 22, 2007 at 4:27 pm at the 73rd Precint by Broderick Nesbitt, While A Grand Jury Statement Shows, (Refer To Exhibit D) Nesbitt States on page 6 (Line 9-16), that he was leaving his building at 4:40 pm and he seen the incident going on in front of 315 Sutter Avenue. It is very unclear if Nesbitt was presented at the station house conducting a photo array or coming out his building while the incident was going on in front of 315 sutter ave. Nesbitt grand jury testimony impeached Chavers statement he initially took from Nesbitt on the day of the incident.

EXHIBIT L:
Statement 19 is being Disputed:
 • Following the hearing the court found that detective Chavers testified credibly regarding Nesbitt's identification, that Nesbitt told detective Chavers he knew plaintiff and that Nesbitt knew plaintiff for long time.

Exhibit Shows: During the criminal trial defense moved for a mistrial based on Chavers false statement while testifying for the people (that he spoken to the complainant, & the CW had basically said that "Black" the defendant Jamaal Russ had shot him .Defense argues that the statement actually IMPEACHED the prosecutor's own witness (Tyron Jordan the c/w) who testified immediately pior to the Detective. Chavers again tried to submit false statements an mislead the jury by committing fraud an perjury. The courts denies defense motion, however the judge honorable john G. Ingram did promise to give further curative instruction to the jury if the defense requested it.

EXHIBIT F:
Statement Number 26 Is Being Disputed:
 • On March 13, 2008, Detective Chavers obtained a complaint and Warrant for plaintiff's arrest warrant signed by the Honorable John H. Wilson in the New York City Criminal Court, Kings County.

Exhibit Shows: On March 13 2008 Detective Chavers obtained a complaint and warrant for plaintiff's arrest through Conspiracy, Fraud, Misleading Information and conspired with reckless disregard for the truth. He submitted false statements from the complaining victim to Judge John Wilson to obtain an Arrest Warrant. It is very unclear how did Chavers retrieve such statement when the prosecution was unaware the Mr. Jordan was even cooperative with Chavers.

EXHIBIT G AND H:
Statement Number 28 Is Being Disputed:
 • On March 20, 2008, the Grand Jury of Kings County voted to indict plaintiff for the shooting of Tyrone Jordan.

Exhibit Shows: An affidavit that was not notarized

Exhibit H Shows: A Grand Jury Statement Shows that Detective Chavers stated he had spoken with Tyrone Jordan and was told what happened at the scene. pg7 lines 2-7.

EXHIBIT I:

Statement Number 32 Is Being Disputed:

- Jarnell is one year, one month, and one day older than plaintiff. The two brothers look very similar and people mistake them for each other.

Exhibit Shows: At the time of the incident plaintiff and his brother shared the same address which is , 301 Sutter Avenue apt 5B, Page 5 paragraph 6-7 of Notice to Compel Discovery prepared by defense in the Criminal Proceedings. Despite having similar appearances and names, there is no indication that Detective Chavers or the Prosecution investigated whether Jarnell Russ committed the crime that Jamaal Russ stands accused of.

EXHIBIT J:

Statement Number 35 Is Being Disputed:

- Plaintiff would not be surprised if someone misidentified him as the shooter when it could have been plaintiff's brother who committed the shooting.

Exhibit Shows: There was evidence that another suspect had be arrested with the gun used in the incident an suspect was arrested in the same area the incident arose. suspect could have committed the crime that Detective Chavers was aware of and took no action on investigating those leads.

# EXHIBIT





# PRISONER MOVEMENT SLIP



## *Arresting Officer*

A/O N.. CHAVERS

Arrest : 73RD PRECINCT   Possible DAT?:  ☐ YES   ☐ NO

**K08624241J**
Date/Time:  03/14/2008 12:00:00

CELL .   Fax #:

Defen...

RU.. JAMAL

Sex: ..   Race: BLACK   DOB: 09/04/1983   Age: 0

Major ...es:

PL 1: ..01: MURDER 2ND: INTENTIONAL

PL 2. ..3: CRIMINAL POSSESSION OF A WEAPON

PL 1. ..01: ASLT W/INT CAUS SERIOUS PH INJ

Co-De...nts:  ☐ YES   ☐ NO

## *Criminal Justice Agency*

Warr.. ..e check by (intl):   Warrant:  ☐ YES   ☐ NO   Warr/Dckt #:

CJA I..  ..w Required?:  ☐ YES   ☐ NO   CJA Interview Time:  :

## *Booking Supervisor*

DAT ...:  ☐ YES   ☐ NO   DAT Serial #:

Arres... ..ficer excused?:  ☐ YES   ☐ NO   Return Date:

Prints ....d:  ☐ YES   ☐ NO   Printed?: ☐ YES   ☐ NO   ☐ REFUSED

Searc...

## *Detention Alert*

Priso.. ..ttempted escape:  ☐ YES   ☐ NO

Priso.. ..ttempted suicide?:  ☐ YES   ☐ NO

Priso.. ..ssaulted member of the service?:  ☐ YES   ☐ NO

Other.. ..LAIN):

# EXHIBIT



/11/12                Eastern District of New York - Live Database Version 5.1.1

| | | |
|---|---|---|
| | | its opponent. In addition, the plaintiff seeks to take the deposition of the non-party victim of the crime charged in the underlying criminal case. I directed the plaintiff to confer with the pro se office with respect to obtaining a subpoena for that deposition, and advised that the plaintiff is responsible for securing a court reporter for such deposition. I will of course entertain a motion by the victim to quash any such subpoena or for a protective order. All remaining discovery will be completed by January 19, 2012. (4) I direct the defendant's counsel to provide a copy of this minute order to the plaintiff. (Orenstein, James) (Entered: 10/19/2011) |
| 10/26/2011 | 40 | MOTION for Extension of Time to File Response/Reply as to 39 Status Conference,,,,,,,, *regarding the existence of any handwritten notes* by Darrell Chavers. (Richardson, Lisa) (Entered: 10/26/2011) |
| 10/26/2011 | | ORDER granting 40 Motion for Extension of Time to File Response/Reply -- The application is granted. No later than November 2, 2011, the defendant's counsel will submit a letter setting forth whether the defendant created any written materials aside from the DD-5 forms relating to this case. Ordered by Magistrate Judge James Orenstein on 10/26/2011. (Rambaud, Dennis) (Entered: 10/26/2011) |
| 11/02/2011 | 41 | REPLY in Opposition re 36 Amended Complaint, filed by Darrell Chavers. (Richardson, Lisa) (Entered: 11/02/2011) |
| 11/02/2011 | 42 | STATUS REPORT *regarding handwritten investigation notes* by Darrell Chavers (Richardson, Lisa) (Entered: 11/02/2011) |
| 11/15/2011 | 43 | NOTICE of Change of Address by Jamaal Russ, from: 706 Jefferson Avenue, Apt. #1, Brooklyn, NY 11221; to: 1453 Prospect Place, Apt. #1E, Brooklyn, NY 11213. This change has been noted on the docket sheet. (Manuel, Germaine) (Entered: 11/15/2011) |
| 11/15/2011 | 44 | Letter dated 11/15/11 from Jamaal Russ to USMJ Orenstein, informing the Court that pltff will attempt to proceed against the District Attorney or any Assistant District Attorneys and entities. Pltff disagrees with the decision that his amended complaint should be denied. Pltff seeks to add Commissioner Raymond Kelly and the City of New York as defts. (Galeano, Sonia) (Entered: 11/17/2011) |
| 12/14/2011 | 45 | REPORT AND RECOMMENDATIONS re 36 Amended Complaint, filed by Jamaal Russ -- For the reasons set forth in the attached document, I respectfully recommend that the court deny the plaintiff's motion for leave to file an amended complaint. I direct the defendant's counsel to provide a copy of this Report and Recommendation to the plaintiff, and to file proof of such service no later than December 19, 2011. Any objections to this Report and Recommendation must be filed on the electronic docket no later than January 3, 2012. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. Ordered by Magistrate Judge James Orenstein on 12/14/2011. (Orenstein, James) (Entered: 12/14/2011) |
| 12/20/2011 | 46 | Letter *providing proof of service of Report and Recommendation* by Darrell Chavers (Richardson, Lisa) (Entered: 12/20/2011) |

/11/12                          Eastern District of New York - Live Database Version 5.1.1

| | | *extension to comply with opposing side interrogatories and request for production of documents of pltff, filed* by Jamaal Russ. (Galeano, Sonia) (Entered: 01/04/2012) |
| 01/03/2012 | 48 | OBJECTION to 45 Report and Recommendations filed by Jamaal Russ. (Galeano, Sonia) (Entered: 01/04/2012) |
| 01/05/2012 | | ORDER re 47 Letter MOTION for Extension of Time to Complete Discovery . *Pltff request a 60 day extension to comply with opposing side interrogatories and request for production of documents of pltff, filed* filed by Jamaal Russ -- The defendants shall respond in writing by January 9, 2012. Ordered by Magistrate Judge James Orenstein on 1/5/2012. (Rambaud, Dennis) (Entered: 01/05/2012) |
| 01/09/2012 | 49 | MOTION to Compel *plaintiff's responses to discovery by a date certain, and defendant's response to Jan. 5, 2012 Court Order* by Darrell Chavers. (Richardson, Lisa) (Entered: 01/09/2012) |
| 01/09/2012 | | SCHEDULING ORDER: A status conference is scheduled for January 18, 2012, at 11:30 a.m. (c/m to pro se). Ordered by Magistrate Judge James Orenstein on 1/9/2012. (Rambaud, Dennis) (Entered: 01/09/2012) |
| 01/12/2012 | 50 | MOTION to Adjourn Conference *currently scheduled for January 18, 2012 at 11:30 a.m.*, MOTION for Extension of Time to Complete Discovery by Darrell Chavers. (Richardson, Lisa) (Entered: 01/12/2012) |
| 01/13/2012 | | ORDER granting 50 Motion to Adjourn Conference; granting 50 Motion for Extension of Time to Complete Discovery -- The application for an extension of time to complete discovery is granted. All remaining discovery will be completed by February 27, 2012. The status conference previously scheduled for January 18, 2012, is cancelled. The parties shall submit a joint status report no later than January 23, 2012. I deem the defendants' motion to compel the plaintiff's response to their discovery demands (DE 49 ) to be withdrawn. I direct the defendant's counsel to provide a copy of this order to the plaintiff. Ordered by Magistrate Judge James Orenstein on 1/13/2012. (Rambaud, Dennis) (Entered: 01/13/2012) |
| 01/13/2012 | | SCHEDULING ORDER: The pretrial conference previously scheduled for February 3, 2012, is rescheduled for March 13, 2012, at 9:30 a.m. I direct the defendant's counsel to provide a copy of this order to the plaintiff. Ordered by Magistrate Judge James Orenstein on 1/13/2012. (Rambaud, Dennis) (Entered: 01/13/2012) |
| 01/13/2012 | | ORDER withdrawing 49 Motion to Compel. Ordered by Magistrate Judge James Orenstein on 1/13/2012. (Rambaud, Dennis) (Entered: 01/13/2012) |
| 01/13/2012 | | ORDER denying as moot 47 Motion for Extension of Time to Complete Discovery. Ordered by Magistrate Judge James Orenstein on 1/13/2012. (Rambaud, Dennis) (Entered: 01/13/2012) |
| 01/19/2012 | 51 | MEMORANDUM AND ORDER ADOPTING REPORT AND RECOMMENDATIONS, For the reasons stated above, this Court concurs with Judge Orenstein's conclusion that it would be futile to permit pltff to amend his pleading in the |

# EXHIBIT



OFFICE OF THE DISTRICT ATTORNEY
**RENAISSANCE PLAZA at 350 JAY STREET**
BROOKLYN, N.Y. 11201-2908

CHARLES J. HYNES
*District Attorney*

PRECINCT OF OCCURRENCE: 073
ORANGE ZONE

# GRAND JURY SYNOPSIS SHEET

INDICTMENT NO:     2712 / 2008

GRAND JURY LETTER:   H   TERM:   3         A.D.A:   JOSHUA CHARLTON

TYPE OF INSTRUMENT:  _X_ INDICTMENT  ____ PROS. INFO.  ____ S.C.I.   ____ FAM. CT.

| NAME | DOCKET | STATUS | | | | | | | | | 190.50 SERVED | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | XP | XB | XJ | P | B | J | AFO | VFO | Y | N | W/D |
| 1. JAMAL RUSS | 2008KN019531 | | | | | | X | X | X | X | | |

### DEFENDANT SHOOTS C/W IN THE ABDOMEN

ON 8/22/07 14:40 IN FRONT OF 315 SUTTER AVENUE THE DEFENDANT SHOT TYRONE JORDAN ONE
TIME IN THE STOMACH AND FLED.

A/O RECOVERED A SHELL CASING FROM THE SCENE AND OBSERVED BLOOD ON THE GROUND. A/O
INTERVIEWED THE C/W IN THE HOSPITAL, BUT THE C/W WOULD NOT COOPERATE.

P WITNESS # 2

AN E/W, WHO KNOWS THE DEFENDANT WELL, OBSERVED THE SHOOTING, OBSERVED BLOOD ON THE
VICTIM'S SHIRT AND IDENTIFIED THE DEFENDANT TO THE POLICE.

C/W WAS ADMITTED TO BROOKDALE HOSPITAL FOR THREE DAYS WHERE HE WAS TREATED FOR
GUNSHOT WOUND THAT ENTERED HIS LOWER-LEFT ABDOMEN AND EXITED HIS LOWER-LEFT FLANK.

C/W'S MEDICAL RECORDS SHOW PHYSICAL INJURY.

Δ ARREST DATE: 3/14/08     TIME: 12:00     WHERE: 1470 EAST NEW YORK AVENUE

I.D.:  __ LINE-UP  ____ PHOTO (CONFIRMATORY)  _X_ PHOTO ARRAY  ____ POINT OUT  ___ SHOW-UP __NONE

BY WHOM?  A CONFIDENTIAL WITNESS

WHEN/WHERE:  8/22/07   16:27   073 SQUAD

RELATIONSHIP BETWEEN PARTIES (INCLUDE ANY KNOWN MOTIVE):  PARTIES ARE KNOWN TO EACH OTHER

INJURIES:  ADMITTED TO BROOKDALE HOSPITAL FOR THREE DAYS WHERE HE WAS TREATED FOR GUNSHOT
WOUND THAT ENTERED HIS LOWER-LEFT ABDOMEN AND EXITED HIS LOWER-LEFT FLANK.

PROPERTY TAKEN:  NONE

# EXHIBIT



1        A.   Yes, it is.

2    Q.   Is 315 Sutter Avenue also a housing project?

3        A.   Yes, it is.

4    Q.   Approximately how far -- who do you see over

5    at 315 Sutter?

6        A.   I seen Jamal Russ.

7    Q.   How far away were you from Jamal Russ at that

8    time?

9        A.   About twenty feet.

10   Q.   And, that's approximately this far?

11       A.   Yes, something in that radius.

12       MR. CHARLTON:  For the record, indicating the

13   witness box to the well.

14   Q.   Was there anything obstructing your view at

15   that time?

16       A.   No, it wasn't.

17   Q.   It was daytime?

18       A.   Yes, it was.

19   Q.   Approximately 2:40 p.m., right?

20       A.   Yes.

21   Q.   What did you see Jamal Russ do?

22       A.   It was one shot to the individual.

23   Q.   You saw him raise the gun?

24       A.   Yes, I seen him.

25   Q.   Tell us what you saw.

1      A.    I seen him -- him raise the gun, shot the

2      individual.  The individual, I don't know his name,

3      but he is in my building, which is 335 Sutter

4      Avenue.  I seen the individual collapse on the side

5      of my building.

6      Q.    Okay.

7            Take us from the beginning when you saw what

8      Jamal Russ was doing and what you saw the other

9      person do.

10     A.    I seen Jamal Russ shoot the individual in

11     the back or the side.  I can't say, you know, where

12     was the actual shot at, but --

13     Q.    So we're all clear, are they facing each

14     other?

15     A.    Yes, face-to-face.

16     Q.    When Mr. Russ raises the gun, what does the

17     other person do?

18     A.    He runs toward my building, 335 Sutter

19     Avenue.

20     Q.    How many shots total?

21     A.    One shot.

22     Q.    Did you see anything on the person who got

23     shot on his clothes?

24     A.    Yes, it was blood, pretty much on the

25     left-hand side.

# EXHIBIT



# NEW YORK CITY POLICE DEPARTMENT

## *Photographic Line-Up*



## SHOWING PHOTO DISPLAY:

### Before conducting the photo line-up, the following should be read to each witness

"In a moment I am going to show you a group of photographs. This group of photographs may or may not contain a picture of the person who committed the crime now being investigated. Keep in mind that hair styles, beards, and moustaches may be easily changed. Also, photographs may not always depict the true complexion of a person -- it may be lighter or darker than shown in the photo. Pay no attention to any markings or numbers that may appear on the photos or any other differences in the type or style of the photographs. When you have looked at all the photos, tell me whether you see the person who committed the crime. Do not tell other witnesses that you have or have not identified anyone."

Identification made : ☑ YES  ☐ NO   4 27ᴾᴹ   Photo selected :  # ___1___

Date of Identification : ___8/21/07 4:2#___   Initialed by the witness : ___DRC   JV.___

| COMPLAINT - FOLLOW UP INFORMATIONAL REPORT | Crime/Condition ASSAULT 1 (NFS) | Pct. 73 | Date of This Report 08/22/2007 |
|---|---|---|---|

| Date of Original Report 08/22/2007 | Date Assigned 08/22/2007 | Complaint No. 2007-073-08232 | Case No. 1820 | Unit Reporting 73 SQD | Follow-Up No. 0000 10 |
|---|---|---|---|---|---|

| Complainant's Name JORDAN, TYRONE | Nickname, First Name, Alias | Address | Apt No. |
|---|---|---|---|
| Sex MALE | Race BLACK | Date of Birth | Age 46 |
| Home Telephone | Business Telephone | Cell Phone | E-Mail Address |

**Topic/Subject:**
COMPUTER CHECKS/PHOTO ARRAY

**Summary of Investigation:**
1. On this date using the information supplied to me by a witness, I conducted computer checks and found information for a person paroled in the 73 Pct., using the address 301 Sutter Ave., apt. 5B.

2. Using that information, I ran the photo using the NYSID #. I then used that information to put a photo array together. I placed into the computer M/B/23-25/black short hair/crew cut. The computer showed 5139 matches. I placed together 5 similar males along with the one photo that were all randomly placed into positions by the computer. I then gave the photo array to Det. Chavers.

3. For your information.

| Reporting Officer: | Rank DT2 | Signature | Name Printed JAYNE JENNINGS | Tax Reg. No. | Command 295 |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing | Date Reviewed 8-27-07 | Date of Next Review | Signature | Supv. Tax No. |

# EXHIBIT



03-13-09 (Friday)          Part 21

Present: Justice: John G. Ingram          Officers:  Sgt   Ray Engelhardt
     Clerk: Gail Kohn          SCO   Ashanti Black
     OCR:  Rosanne Terman  x 61794          "   Jennifer Curry
                                              "   Robert Feige

Proclamation Made & Court is Opened.
    - CASE ON TRIAL -          ( Cont. From 03-12-09 )
People State of NY          ADAs: Katherine Teitgen &  Alyshea Austern
  v.    (2712-08 / Att. Mur. 2)
Jamal Russ          Defense Attys: Robert Torres  (L)  &
                                    John Godfrey  (L)

All parties are present.
Prior to the Jury entering, Discussions are held re: the People wishing to Offer into Evidence
"Wanted" Photos of the D published by the NYC Housing Police. The Court DENIES their
MOT as he feels their Probative Value does NOT Outweigh their Prejudicial Effect.

People's Witness Sworn:     3)     Broderick Nesditt
                                  Caretaker @ 335 Sutter Ave.
                                ~~Eye Witness to Shooting~~
                                ( See Exhibit List  P3 )

                  4)     T█████  J█████
                          CW (Victim)
            * Brought in via "Material Witness Order "
                    (No New Exhibits)

                  5)     Det. Darrell Chavers
                   Sh. # 1107 NYPD / 73rd Det. Squad
                    ( See Exhibit List  D - A )

                 6)     P.O.  Jonathan Yeaman
         Sh. # 31087 NYPD / B'klyn North Evidence Collection Team
             ( See Exhibit List  P4 thru 7 & D - B )

As the above 4 Witnesses complete testifying today in much less than expected time, the Jury is
admonished & excused for the afternoon @ 12;50 PM, and told to report back Monday, 3-16-2009
CONS @ 9:50 A.M for the People's case to conclude.

After they exit the courtroom, the Defense once again makes a MOT for a Mistrial due to
Detective Chavers (Wit. #5 above) having testified that he'd spoken to the complainant, & the CW
had basically said that "Black" (the Defendant Jamal Russ) had shot him.
The Court DENIES this MOT, however he DOES promise to give further curative instruction to
the Jury if the Defense requests it.

NYC 80

03-16-09 (Monday)       Part 21

Present: Justice: John G. Ingram       Officers: Sgt  Ray Engelhardt
     Clerk: Gail Kohn               SCO  Ashanti Black
     OCR: Rosanne Terman x 61794       "   Jennifer Curry
             Proclamation Made & Court is Opened.
       - CASE ON TRIAL -     ( Cont. From 03-13-09 )

People State of NY          ADAs: Katherine Teitgen & Alyshea Austern
   v.    (2712-08 / Att. Mur. 2)
Jamal Russ          Defense Attys: Robert Torres (L) &
                     John Godfrey (L)

All parties are present.
Prior to the Jury entering, a Charge Conference is held . The Defense then RENEWS their MOT for a Mistrial based on Detective Chavers's hearsay statement while testifying for the People last Friday. Defense Argues that that statement actually IMPEACHED the Prosecutor's own Witness (T████ J██████ the CW) who had testified immediately prior to the Detective. The Court DENIES their MOT, stating that a curative instruction WOULD be given, & it would then be left for the Jury to decide, & possibly for an Appellate Court to address thereafter.
      People's Witness Sworn:    7)  P.O. Jason Rozenfeld ( See Exhibit List D - C )
                    Sh. #16663 NYPD / Public Service Area (P.S.A.) - 2

               8)  ~~Trooper Matthew T. Forestire~~ (No New Exhibits)
                Sh. #4620 NYSP / Division of State Police
                    Monroe County Barracks
* Before the following Witness is called, the People mention that they are thinking of calling a Detective Witness that was NOT on their Witness List. After further Discussions, they decide NOT to call that party. The Court asks the Defense whether THEY wish to call that Detective. They do NOT.          9) Dr Onyeka Nwokocha ( See Exhibit List P8 & 9 )
                    Surgical Resident
                  Brookdale General Hospital
       - THE PEOPLE REST -     - LUNCH BREAK -
After the Jury is sent out, Defense Moves for a Trial Order of Dismissal, claiming that the People have NOT made out a Prima Facie Case, & that the odds of misidentification are too great to allow a Verdict of Guilty to stand. The Defense Submits that that would also apply to the weapons charges. They add that the People have NOT fulfilled their Burden of "intent" for the various counts of the Indictment where that is an element, nor the "seriousness" of the injuries required for Ct. 2 (Att. Aslt 1). The People OPPOSE Defense's MOT, & it is DENIED by the Court. The case is now up to the Jury to Decide.
Defense Counsel now advises the Court that they will NOT be putting the Defendant on the Stand, & the D signs a WAIVER of his Right to Testify @ Trial.

After Lunch, the Jury enters, & Roll Call is waived.
They are admonished & excused for the afternoon @ 2:40 PM, and told to report back Wednesday, 3-18-2009 CONS @ 10:00 A.M for Defense's case (1 Witness), Summations & Charge.
The Part will be down tomorrow, 03-17-09, as the Court has Military Orders (among other edicts) including to march in the St. Patrick's Day Parade.

NYC 90

# EXHIBIT



| COMPLAINT - FOLLOW UP INFORMATIONAL REPORT | | | Crime/Condition ASSAULT 1 (NFS) | Pct. 73 | | Date of This Report 08/22/2007 |
|---|---|---|---|---|---|---|
| Date of Original Report 08/22/2007 | Date Assigned 08/22/2007 | Complaint No. 2007-073-08232 | Case No. 1820 | Unit Reporting 73 SQD | | Follow-Up No. 04 6 |

| Complainant's Name JORDAN, TYRONE | Nickname, First Name, Alias | Address | | | | Apt No. |
|---|---|---|---|---|---|---|
| Sex MALE | Race BLACK | Date of Birth | | | | Age |
| Home Telephone | Business Telephone | Cell Phone | | | | E-Mail Address |

| Person Interviewed Last Name, First M.I. JORDAN, TYRONE | | Nickname, First Name, Alias | Address | Apt No. |
|---|---|---|---|---|
| Position/Relationship | Sex | Race | Date of Birth | Age |
| Home Telephone | Business Telephone | Cell Phone | E-Mail Address | |

**Topic/Subject:**
INTERVIEW OF C/V TYRONE JORDAN

**Summary of Investigation:**
1. On August 22, 2007, at approximately 1535 HRS DET. O'GORMAN AND I RESPONDED TO BROOKEDALE HOSPITAL. AT THIS TIME THE C/V WAS INTERVIEWED.

2. THE C/V STATED THAT HE WAS STANDING IN FRONT OF 315 SUTTER AVE WITH IS GIRLFRIEND KIA JOYNER. THE C/V STATED THAT HE WAS APPROACHED BY A MALE KNOWN TO HIM AS "BLACK". THE C/V BELIEVES THAT BLACK LIVES IN 301 SUTTER AVE. THE C/V STATES THAT AS BLACK APPROACHED HIM, KIA RAN IN THE OPPOSITE DIRECTION. THE C/V STATED THAT AS HE IS STANDING FACE TO FACE WITH B LACK, HE ASKED BLACK "WHAT S, GOOD WHAT'S POP'N. THE C/V STATED THAT BLACK STEPPED ABCK A FEW STEPS AND PULLED A GUN FROM HIS WAIST AND FIRED 1 SHOT STRIKING HIM IN THE LEFTSIDE OF HIS ABDOMIN. THE C/V STATED THAT HE IS NOT SURE IN WHICH DIRECTION BLACK RAN. THE C/V WENT ON TO STATE THAT HE RAN FROM IN FRONT OF 315 SUTTER AVE TO IN FRONT OF 335 SUTTER AVE. THE C/V DESCRIBES BLACK AS A DARK SKINNED MALE, WEARING A BLUE HOODY. I ASKED THE C/V FOR A REASON WHY HE WAS SHOT. HIS REPLY WAS THAT BUILDINGS 315 , 335 IS FEUDING AGAINST 301. THE C/V WAS AKSED IF HE PERSONALLY HAD A BEEF WITH BLACK, HE REPLIED THAT HE DID NOT.

| Reporting Officer: | Rank DT1 | Signature | | Name Printed DARRELL CHAVERS | Tax Reg. No. | Command 295 |
|---|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing | Date Reviewed 9-27-07 | Date of Next Review | Signature | | Supv. Tax No. |

FIRST INVESTIGATION
COMMAND          DATE ASSIGNED          DATE RETURNED          (RANK/LAST NAME OF ASSIGNED INVESTIGATOR          TAX REGISTER NO.

Complete all captions
DEFENDANT KNOWN AT ADDRESS
ADDRESS VERIFICATION-EXISTS          ☐ YES   ☐ NO
DEFENDANT LIVING AT ADDRESS          ☐ YES   ☐ NO
DEFENDANT KNOWN AT ADDRESS          ☐ YES   ☐ NO   LIST THE DATE AND TIME OF VISITS TO ADDRESS

THE PEOPLE OF THE STATE OF NEW YORK

v

JAMAL ROSS

STATE OF NEW YORK
COUNTY OF KINGS

DETECTIVE DARRELL A CHAVERS SHIELD NO.1107, OF 73 PCT. SAYS THAT ON OR ABOUT AUGUST 22,2007 AT APPROXIMATELY 02:40 PM AT 315 SUTTER AVENUE COUNTY OF KINGS, STATE OF NEW YORK,

THE DEFENDANT COMMITTED THE OFFENSE(S) OF:

**2008KN019531**

PL 120.00(1)          ASSAULT IN THE THIRD DEGREE (DQO)
PL 120.05(2)          ASSAULT IN THE SECOND DEGREE (DQO)
PL 110/125.25(1)      ATTEMPTED MURDER IN THE SECOND DEGREE (DQO)
PL 265.03(1)(B)       CRIMINAL POSSESSION OF A WEAPON IN THE SECOND
                      DEGREE (DQO)

IN THAT THE DEFENDANT DID;

WITH INTENT TO CAUSE PHYSICAL INJURY TO ANOTHER PERSON, CAUSE SUCH INJURY TO SUCH PERSON OR TO A THIRD PERSON; WITH INTENT TO CAUSE PHYSICAL INJURY TO ANOTHER PERSON, CAUSE SUCH INJURY TO SUCH PERSON OR TO A THIRD PERSON BY MEANS OF A DEADLY WEAPON OR A DANGEROUS INSTRUMENT; WITH INTENT TO CAUSE THE DEATH OF ANOTHER PERSON, ATTEMPT TO CAUSE THE DEATH OF SUCH PERSON OR OF A THIRD PERSON; WITH INTENT TO USE UNLAWFULLY AGAINST ANOTHER, POSSESS A LOADED FIREARM.

THE SOURCE OF DEPONENT'S INFORMATION AND THE GROUNDS FOR DEPONENT'S BELIEF ARE AS FOLLOWS:

DEPONENT IS INFORMED BY T███████ J██████ THAT, AT THE ABOVE TIME AND PLACE, THE DEFENDANT DID POINT A HANDGUN AT INFORMANT AND DID FIRE SAID HANDGUN STRIKING INFORMANT IN THE ABDOMEN.

DEPONENT IS INFORMED BY A REPRESENTATIVE OF BROOKDALE HOSPITAL THAT T██████ J██████ DID SUSTAIN A GUNSHOT WOUND TO THE ABDOMEN AND WAS ADMITTED AND TREATED AT SAID HOSPITAL

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW.

3/13/08
DATE          SIGNATURE

3-13-08

Sworn to before me this date

AR3  MAR 13 2008
JUDGE: WILSON
REP. EBANKS

In the name of the People of the State of New York: To any Police Officer

An appropriate accusatory instrument having been filed with this Court against _____ LAST NAME _____ FIRST NAME

the defendant in the criminal action herein; charging him with _____ and

○ the defendant not having been arraigned upon the accusatory instrument by which this criminal action against him was commenced and this Court requiring his appearance before it for the purpose of arraignment upon the accusatory instrument specified above.

☐ the defendant having been arraigned upon the accusatory instrument by which this criminal action against him was commenced and this Court requiring his appearance before it in this pending criminal action.

☐ the defendant having been convicted of _____ and having been sentenced to _____ and this court requiring his appearance before it.

You are therefore commanded forthwith to arrest the defendant named above and bring him before this Court without unnecessary delay. However, when a different procedure after arrest is mandated by law, you shall proceed in compliance with that mandate.

| Dated | City of New York | By Order of the Court | Judge (Arrest Warrant) | Court Clerk (Bench Warrant) |

☐ NYSID No. Not Available   ☐ NYSID No.

BAIL CONDITION VIOLATED: JUDGE WILSON

**PRINT or TYPE ALL INFORMATION CAPTIONS**

| ENTERED - DCJB NO. | | ENTERED - LOCAL NO. | | RECEIVED |
|---|---|---|---|---|

| 1. DEFENDANT'S LAST NAME, FIRST, M.I. | 2. SEX | 3. RACE | 4. DATE OF BIRTH | 5. HGT. | 6. WGT. | 7. EYE COLOR | 8. HAIR COLOR | 9. SKIN TONE |
|---|---|---|---|---|---|---|---|---|
| Rice Jamal | M | BLK | 07/06/83 | 5'10 | 160 | BLK | BLK | DARK |

| 10. NYSID NUMBER (NYIIS) | 11. SOCIAL SECURITY NO. | 12. DRIVER'S LICENSE NUMBER | ( ) OPER. | ( ) CHAUF. |
|---|---|---|---|---|
| MKK6V1HQ | 063701PPP | | | |

| 12A. STATE | 12B. YEAR LIC. EXP. | 13. OFFENSE CODE | 14. DATE OF WARRANT MO. DAY YR | 15. NYCPD WARRANT DIVISION SERIAL NO. | 16. COURT DOCKET NUMBER |
|---|---|---|---|---|---|

| 17. DEFENDANT'S VEH. REG. NO. | 18. PCT. COMPLAINT NO. | YR. | 19. VICTIM INFORMATION |
|---|---|---|---|

| 19A. MISC. INFORMATION (scars, marks, a.a.) | AGE | HANDICAPPED ☐ YES ☑ NO |
|---|---|---|

| 20. DEFENDANT'S RESIDENCE ADDRESS | 20A. APT. NO. | 21. BORO, TOWN, CITY, STATE, ZIP CODE | 22. DEG. RES. PCT. | 23. DATE OF ARREST MO. DAY YR | 24. PCT. OF ARR. |
|---|---|---|---|---|---|
| 301 SUTTER AV | 5-B | KINGS   NY 11212 | | | |

| 25. ARREST NO. | 26. CHARGE: PENAL LAW, TRAFFIC, V.A.C., ETC. | 27. CRIME CLASS F M V | 28. NAME & ADDRESS, NEXT OF KIN |
|---|---|---|---|

| 29. ARRESTING OFFICER'S NAME | 30. TAX REG. NO. | 31. SHIELD NO. | 32. DEPT/AGENCY | 33. COM'D CODE |
|---|---|---|---|---|
| CHAVEZ DARICI | 877876 | 1107 | NYPD | 075 |

| 34. DEFENDANT'S EMPLOYER'S NAME | ADDRESS | TEL. NO. |
|---|---|---|

**FOR OFFICE USE ONLY**

| FWD. DATE MO. DAY YR | PAGE NO. | COMMANDS | ARREST ON WARRANT | COMPUTER HIT | ATTACHED POLAROID PHOTO USE SCOTCH TAPE |
|---|---|---|---|---|---|
| LODGED DATE MO. DAY YR | FACILITY CODE NO. | | ARREST. OFF. LAST NAME | FIRST | |
| DC CHECK DATE MO. DAY YR | NO RESULT | D.C.N.Y. NO. | INSTITUTION | SHIELD NO. | COMMAND |
| ADDITIONAL DATA | | | DATE | TIME | NOTE: If the Polaroid Photo was not attached to this form, indicate by signing your name in the appropriate space. |
| | | | INTER-COUNTY ARRAIGNMENT VERIFIED BY | REC'D BY          C.W.U. | SIGNATURE |
| F.P.F. DATE MO. DAY YR | | | BOROUGH NO. | FAX NO. | DATE |

**INSTRUCTIONS:**
1. Arresting Officers shall complete all information captions which are not shaded.
2. Court Clerks shall enter the "Bail Condition Violated" and enter the NYSID Number if missing from caption No. 10.
3. In all warrant cases without an arresting officer, Summons Part Court Clerks shall complete captions 1-2-3-4-5-6-7-8-14-16-19-19A-20-20A-21 based upon the information supplied by the complainant. The name and address of the complainant is to be entered in caption 19A.

ORIGINAL/DUPLICATE TO WARRANT DIVISION - TRIPLICATE TO COURT

Sworn to before me this date

AR3 MAR 13 2008
JUDGE: WILSON
DEP   FRANKS

# EXHIBIT



SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS
----------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK       X      CERTIFICATION PURSUANT
                                          X      TO C.P.L. 180.80 (2) (A)
                                          X
           against                        X      DOCKET NO. 2008KN019531
                                          X
                                          X
        Jamal Russ                        X      INDICTMENT NO. 2712/2008
                          Defendant.      X
----------------------------------------------X

I, SHANNAH DALTON _____, certify that

on MARCH 20, 2008, the Grand Jury of Kings County voted to indict the

above defendant.

_____

CHARLES J. HYNES
District Attorney
Kings County

By: _____
Assistant District Attorney

provisions that this order must be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or possession of the United States, if it is established that the person against whom the order is sought is an intimate partner of the protected party and has been or will be afforded reasonable notice and opportunity to be heard in accordance with state law sufficient to protect that person's rights (18 U.S.C. §§2265, 2266).

It is a federal offense to: cross state lines to violate an order of protection; cross state lines to engage in stalking, harassment or domestic violence; possess, purchase, ship, transfer or receive a handgun, rifle, shotgun or other firearm or ammunition following a conviction of a domestic violence misdemeanor involving the use or attempted use of physical force or a deadly weapon; or (except for military or law

# EXHIBIT



6

DETECTIVE CHAVERS

1

2

3   Q.   Good afternoon.

4        A.   Good afternoon.

5   Q.   State your name, your shield, and command again

6   for the record?

7        A.   Detective Chavers, shield number 1107, 73rd

8   Detective Squad.

9   Q.   Were you working on August 22, 2007?

10       A.   Yes, I was.

11  Q.   Did you become involved in an investigation that

12  day?

13       A.   Yes, I did.

14  Q.   And what was that investigation about?

15       A.   An alleged shooting.

16  Q.   And as part of that investigation, can you tell us

17  again where you went?

18       A.   To 315 Sutter Avenue, in front of.

19  Q.   Of 315 Sutter?

20       A.   Yes.

21  Q.   What did you observe?

22       A.   I saw blood stains on the ground and gunshot

23  shell-

7

```
1          A.    Yes.

2    Q.    Where else did you go that day as part of this

3    investigation?

4          A.    I went to Brookdale hospital.

5    Q.    Who did you speak to?

6          A.    The gunshot victim Tyrone Jordan.

7    Q.    Did Mr. Tyrone Jordan tell you what happened?

8          A.    Yes, he did.

9    Q.    And as a result of this investigation, did you

10   learn where the alleged shooting took place?

11         A.    Yes, I did.

12   Q.    Where was that?

13         A.    In front of 315 Sutter Avenue.

14   Q.    Is that the same location to where you testified

15   before where you got the shell casing?

16         A.    Yes and the blood.

17   Q.    And you observed blood on the ground, is that

18   correct?

19         A.    Yes.

20   Q.    After that date, did you have the opportunity to
                                    WITNESS # 2
21   have a conversation with ████████████████
```

# EXHIBIT



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM PART 50
-------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK   :

                                    :

-     *against* -

                                      :

JAMAL RUSS,                      :

                           *Defendant.*    :
-------------------------------------------------------------X

NOTICE OF MOTION TO
COMPEL DISCOVERY

Indictment No. 2712/2008
Adjourn Date: January 15, 2009

PLEASE TAKE NOTICE that upon the indictment, the accompanying affirmation of Richard Torres and the prior proceedings in this case, defendant JAMAL RUSS, through his attorney, Seymour James, will move before the Justice presiding in Part 50 of the Supreme Court of the State of New York, County of Kings, 320 Jay Street, Brooklyn, New York, at 9:30 AM on the 22nd day of December, or as soon thereafter as counsel can be heard, for an order pursuant to Fifth and Fourteenth Amendments to the United States Constitution; Article One, Section Six of the New York State Constitution; Article 240 and Section 255.20(3) of the Criminal Procedure Law; *Brady v. Maryland*, 373 U.S. 83 (1963); *People v. Andre W.*, 44 N.Y.2d 179 (1978); *People v. Simmons*, 36 NY2d 126 (1975) for discovery and such other and further relief as the Court deems just and proper.

Dated: Brooklyn, New York
       December 22, 2008

Yours, etc.;

SEYMOUR JAMES
The Legal Aid Society

Attorneys for Defendant
JAMAL RUSS

5.      Assistant District Attorney Katherine Teitgen has told defense couns[ ] that the prosecution has several witnesses to this incident but refuses to give their identies[ ] the defense.

6.      Mr. Russ has an older brother name Jamel Russ.  Several peopl[ ] including his family members, have confirmed that they look strikingly similar.  In fact, o[ ] one of the defendant's court dates, his brother's former attorney, Melissa Kanas on indictmer[ ] 11825-2007 , thought that the defendant was his brother at a distance of less than fifteen feet.

7.      The defendant's brother, Jamel Russ, had been indicted for attempte[ ] murder.  (Exhibit A).  Further, the defendant's brother has given the court 301 Sutter as hi[ ] address on one of his recent arrests.  (Exhibit B).

8.      There is no physical evidence connecting the defendant to this[ ] shooting.

9.      Despite having similar appearances and names, there is no indication[ ] that the police or prosecution investigated whether Jamel Russ committed the crime that[ ] Jamal Russ stands accused of.

10.      Jamal Russ may be accused of a crime committed by his brother Jamel[ ] Russ.  This is a common misidentification.  The defense is unable to effectively investigate[ ] this defense without any access to the witnesses against the defendant.

5

# EXHIBIT



Complaint - Follow Up Report Case

| | COMPLAINT - FOLLOW UP INFORMATIONAL REPORT | Crime/Condition ASSAULT 1 | Pct. 73 | Date of Th 09/03/2007 |
|---|---|---|---|---|

| Date of Original Report 08/03/2007 | Date Assigned 08/03/2007 | Complaint No. 2007-073-07524 | Case No. 1631 | Unit Reporting 73 SQD | Follow-Up 0000 |
|---|---|---|---|---|---|

| Complainant's Name JENKINS, JERMAINE | Nickname, First Name, Alias | Address 301 SUTTER AVE BROOKLYN NY 11212 | | Apt No. 5B |
|---|---|---|---|---|
| Sex MALE | Race BLACK | Date of Birth ▉▉▉▉ | | Age 15 |
| Home Telephone | Business Telephone | Cell Phone | | E-Mail A |

**Topic/Subject:**
REQUEST FOR BALLISTIC COMPARISON

**Summary of Investigation:**
1. On 8/3/2007, at approximately 1900 hours, on the c/o Liberty and Sackman street the above victim was shot b unknown perps. At the crime scene (4) spent .380 cal shell casings were recovered and vouchered #N782830.

2. On 8/22/2007, at approximately 1440 hours, in front 301 Sutter Ave one Tyrone Jordan was shot at said locati the crime scene (1) .380 cal shell casing and (1) spent bullet were recovered and vouchered #N782080.

3. On 9/2/2007, at approximately 2051 hours, in the r/o 301 Sutter Ave one Gerald Griffin Nysid #7468392L was in possession of a loaded .380 cal Fireram. The firearm was recovered and vouchered #N783185.

4. In regards to the above incidents the undersigned is requesting that the below ballistic evidence be compared.

5. 08/03/2007 N/F/S 73 Pct. UF61 # 7524 Voucher #N782830 (4) spent .380 cal casings.
6. 08/22/2007 N/F/S 73 Pct. UF61 # 8232 Voucher #N782080 (1) spent .380 cal casing and (1) spent round.
7. 09/02/2007 C.P.W. 73 Pct. UF61 #8608 Voucher #N7831 85 (1) .380 cal Firearm.

8. Case Active.............

| Reporting Officer: | Rank DT1 | Signature | | Name Printed STEPHEN HUNTER | Tax Reg. No. ▉▉▉ | Comma 295 |
|---|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing | Date Reviewed 9.7.07 | Date of Next Review | Signature | | Supv. T No. ▉▉▉ |

*FILED*
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
DEC 28 2007
BROOKLYN OFFICE

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

```
------------------------------X    Docket#
UNITED STATES OF AMERICA,     :    07-cr-742(ERK)
     - versus -              :    U.S. Courthouse
                             :    Brooklyn, New York
GERALD GRIFFIN,              :
              Defendant      :    November 20, 2007
------------------------------X
```

## TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
### BEFORE THE HONORABLE JAMES ORENSTEIN
### UNITED STATES MAGISTRATE JUDGE

## A  P  P  E  A  R  A  N  C  E  S:

**For the Government**:        **Benton Campbell, Esq.**
                               United States Attorney

                        BY:    **Paul Tuchmann, Esq.**
                               Assistant U.S. Attorney
                               225 Cadman Plaza East
                               Brooklyn, New York  11201


**For the Defendant**:         **Douglas Morris, Esq.**
                               Federal Defenders of NY
                               16 Court Street
                               Brooklyn, New York 11201


**Official Transcriber**:      **Rosalie Lombardi**
                                    **L.F.**


**Transcription Service**:     **Transcription Plus II**
                               821 Whittier Avenue
                               New Hyde Park, N.Y.  11040
                               (516) 358-7352

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

# EXHIBIT



| COMPLAINT - FOLLOW UP INFORMATIONAL REPORT | | | Crime/Condition ASSAULT 1 (NFS) | | Pct. 73 | | Date of This Report 08/22/2007 |
|---|---|---|---|---|---|---|---|

| Date of Original Report 08/22/2007 | Date Assigned 08/22/2007 | Complaint No. 2007-073-08232 | Case No. 1820 | | Unit Reporting 73 SQD | Follow-Up No. 09 11 |
|---|---|---|---|---|---|---|

| Complainant's Name JORDAN, TYRONE | Nickname, First Name, Alias | | Address | | | Apt No. |
|---|---|---|---|---|---|---|
| Sex MALE | Race BLACK | | Date of Birth | | | Age |
| Home Telephone | Business Telephone | | Cell Phone | | | E-Mail Address |

| Person Interviewed Last Name, First M.I. NESBITT, BRODERICK | | Nickname, First Name, Alias | Address | | Apt No. |
|---|---|---|---|---|---|
| Position/Relationship UNKNOWN/NONE | Sex MALE | Race BLACK | Date of Birth | | Age |
| Home Telephone | Business Telephone | Cell Phone | E-Mail Address | | |

**Topic/Subject:**
INTERVIEW OF BRODERICK NESBITT

**Summary of Investigation:**
1. On August 22, 2007, at approximately 1805 HRS BRODERICK NESBITT WAS PRESENT AT THIS OFFICE. AT THIS TIME HE WAS INTERVIEWED DET. ULMER & I. MR. NESBITT STATED THAT HE IS A WORKER WITH THE NYC HOUSING AUTHORITY. MR. NESBITT STATES THAT 335 SUTTER AVE IS HIS ASSIGNED BUILDING. HE WAS STANDING IN F/O 335 SUTTER HE OBSERVED THE C/V TYRON & BJ STANDING IN F/O 315 SUTTER. BJ IS DESCRIBED AN A B/M 5'3 16-20 YRS HE WAS WEARING A WHITE HOODY.

2. MR. NESBITT GOES ON TO STATE THAT HE SEES "BLACK C OMING FROM THE DIRECTION OF 301 SUTTER AVE. MR. NESBITT STATES THAT HE OBSERVES BLACK SWINGS AROUND IN FRONT OF THE C/V AND SHOTS HIM 1 X. BLACK THEN RUNS INTO 301 SUTTER AVE. MR. NESBITT STATES THAT BLACK HAS ON A BLUE HOODY.

3. MR. NESBITT VIEWED A PHOTO ARRAY PREPARED BY DET. JENNINGS. MR. NESBTT IDENTIFIED BLACK AS THE SHOOTER IN POSITION # 1.

| Reporting Officer: | Rank DT1 | Signature | | Name Printed DARRELL CHAVERS | Tax Reg. No. | Command 295 |
|---|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing | Date Reviewed 9.22.07 | Date of Next Review | Signature | | Supv. Tax No. |

## STANDARD OF REVIEW

The purpose of summary judgement is to expedite civil actions by eliminating from the trial calendar those claims that can be properly resolved as a matter of law.

Summary judgement is appropriate where no genuine issue of martial fact exists. D' Amico v. City Of New York, 132 F.3d 145, 149 (2d Cir. 1998), cert. denied, 524 U.S. 911 (1998).
"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is "no genuine issue for trial." Matsushita Elect. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The second Circuit has held that a "moving party may obtain summary judgement by showing that little or no evidence may be found in support of the nonmoving party, case."

Gallo v. Prudential Residential Servs., 22 F3d 1219, 1223 (2d Cir. 1994). As the court stated in Westinghouse Elec. Corp. v. N.Y.C. Transit Auth.,

"one of the principal purposes of the summary judgement rule is to isolate and dispose of factually insupportable claims … thereby permitting courts to avoid 'protracted, expensive and harassing trials.'" 735 F. Supp.1205, 1212 (S.D.N.Y. 1990) (citing Celotex v. Catrett, 477 U.S. 317 (1986)). Furthermore, "the substantive law governing the case will identify those facts that are irrelevant or unnecessary will not be counted."

Dukes v. City Of New York, 879 F. Supp. 335, 339 (S.D.N.Y. 1995).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the non-moving party must do more than present evidence that is merely colorable, conclusory, or speculative. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 249-50 (1986).

Additionally, the non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading, but … must set forth specific facts showing that there is a genuine issue for trial."

Fed. R. Civ. P. 56 (e); Phillips v. Eppolito et al., 02 CV 5662 (DLC), 2004 U.S. Dist. LEXIS 18565, *5 (S.D.N.Y. 2004). The non-movant "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgement." Velasquez v. Bankich, 97 CV 8424 (AKH), 2000 U.S. Dist. LEXIS 15412, at *4 (S.D.N.Y. 2000). Rather, he must offer evidence demonstrating there exists a genuine issue of fact that must be decided by a fact finder.

Here, Plaintiff is opposing the summary judgement that defendant submits at this time.the court should grant summary judgement in favor of Plaintiff Jamaal Russ because plaintiff has and can proffer any admissible evidence that would allow the fact finder to properly proceed to a verdict in his favor. it is a few genuine issue for trial in this matter here before us.

ARGUMENT

POINT 1

## PLAINTIFF'S FALSE ARREST CLAIM SHOULD NOT BE DISMISSED BECAUSE THERE WAS NO PROBABLE CAUSE FOR HIS ARREST

In order to state a claim of false arrest , a plaintiff must show: "'(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to confinement, and (4) the confinement was not otherwise privileged.'" Savino v. City Of New York, 331 F.3d 63, 75 (2d cir. 2003) (quoting Bernard v. United States, 25 F. 3d 98, 102 (2d cir 1994); see also, Curry v. City Of Syracuse, 316 F. 3d 324, 335 (2d cir 2003). In other words, "' a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification.'" Covington v. City of New York, 171 F. 3d 117, 122 (2d cir. 1999) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d cir. 1996). Here plaintiff Jamaal russ respectfully submits that defendant Chavers is not entitled to summary judgement on plaintiff's false arrest claim on two separate grounds.

### A. PLAINTIFF WAS ARRESTED PURSUANT TO A INVALID ARREST WARRANT

Plaintiff Jamaal Russ respectfully submits that summary judgment shouldn't be granted on false arrest claims because plaintiff arrest was made pursuant to a invalid warrant. Accordingly referring to rule 4 (b) Committee Notes on Rules—2002 Amendment
The language of Rule 4 has been amended as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic, except as noted below.

The first non-stylistic change is in Rule 4(a), which has been amended to provide an element of discretion in those situations when the defendant fails to respond to a summons. Under the current rule, the judge must in all cases issue an arrest warrant. The revised rule provides discretion to the judge to issue an arrest warrant if the attorney for the government does not request that an arrest warrant be issued for a failure to appear.

Current Rule 4(b), which refers to the fact that hearsay evidence may be used to support probable cause, has been deleted. That language was added to the rule in 1974, apparently to reflect emerging federal case law. See Advisory Committee Note to 1974 Amendments to Rule 4 (citing cases). A similar amendment was made to Rule 41 in 1972. In the intervening years, however, the case law has become perfectly clear on that proposition. Thus, the Committee believed that the reference to hearsay was no longer necessary. Furthermore, the limited reference to hearsay evidence is misleading to the extent that it might have suggested that other forms of inadmissible evidence could not be considered. For example, the rule made no reference to considering a defendant's prior criminal record, which clearly may be considered in deciding whether probable cause exists. See, e.g., Brinegar v. United States, 338 U.S. 160 (1949) (officer's knowledge of defendant's prior criminal activity). Rather than address that

issue, or any other similar issues, the Committee believed that the matter was best addressed in Rule 1101(d)(3), Federal Rules of Evidence. That rule explicitly provides that the Federal Rules of Evidence do not apply to "preliminary examinations in criminal cases, . . . issuance of warrants for arrest, criminal summonses, and search warrants." The Advisory Committee Note accompanying that rule recognizes that: "The nature of the proceedings makes application of the formal rules of evidence inappropriate and impracticable." The Committee did not intend to make any substantive changes in practice by deleting the reference to hearsay evidence. In general, when an arrest is effected pursuant to an arrest warrant issued by a neutral magistrate, a presumption of probable cause is created. See Golino v. City Of New Haven, 950 F.2d 864, 870 (2d cir.1991). Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause. in order to challenge the presumption, the plaintiff must make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statements was necessary to the finding of probable cause. Intentional or reckless omissions of material information may be sufficient, and recklessness may be inferred where the omitted information was critical to the probable cause determination. Where an officer knows, or has reason to know, that he has materially misled a magistrate, as where a material omission is intended to support a conclusion of probable cause, the shield of qualified immunity is lost. Thus, "'[w]here an arrest is made pursuant to a invalid warrant, there can be claims for false arrest or unlawful imprisonment. Frank v. Delaware 438 u.s. 154, Jones v. Trump, 971 F. Supp. 783, 788-89 (S.D.N.Y.1997) (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 118-19 (2d cir. 1995).

For example, in Jones, plaintiff pro se asserted claims of false arrest and unlawful imprisonment after he was arrested pursuant to a warrant. 971 F. Supp. at 788-89. Although plaintiff admitted the existence of a warrant, he alleged it had been obtained through defendants' misrepresentations. The court dismissed plaintiff's claims of false arrest and unlawful imprisonment pursuant to FED. R. CIV. P. 12(b)(6), finding that plaintiff had "failed to allege that defendants were not entitled to arrest him; ......." Id. As an arrest pursuant to a warrant is an arrest pursuant to legal process, the court explained that plaintiff " may have a viable claim for malicious prosecution after the final resolution of his criminal prosecution, [but] the claims for unlawful imprisonment or false arrest must be dismissed." Id.

Here, it is undisputed that defendant Chavers was not entitled to arrest plaintiff because Chavers obtained an arrest warrant through conspiracy, fraud, false statements from victim, and misleading information signed by the honorable John H. Wilson in New York City Criminal Court, Kings County, authorizing plaintiff's arrest. At the same time, Detective Chaver's signed a criminal complaint. See plaintiff's Exhibit F. Both documents were sworn before judge Wilson, an were obtained through conspiracy, fraud ,hearsay evidence, false statements an misleading information. As a result, there is no presumption of probable cause for plaintiff's arrest which entitles Detective Chavers summary judgement on plaintiff's false arrest claim to be denied.

## B. PLAINTIFF WAS ARRESTED BASED ON NO INFORMATION PROVIDED BY A COMPLAINING WITNESS

Plaintiff's Jamaal Russ respectfully submits that Detective Chavers is not entitled to summary judgment on plaintiff's false arrest claim because there wasn't no probable cause for plaintiff's arrest based on no complaining witness. So called "substantive due process" prevents the government from engaging in conduct that " SHOCKS THE CONSCIENCE " Rochin v. California, 342 u.s. 165 or interferes with rights " implicit in the concept of ordered liberty " Palko v. Connecticut, 302 u.s. 319. The sixth Amendment right of confrontation secures plaintiff's right to face his accuser. Allegations brought by "[A] putative victim of a crime are generally, sufficient, by themselves, to furnish an officer with probable cause to make an arrest. See, e.g., Curley v. Village of Suffern, 268 F. 3d 65, 68 (2d cir. 2001) (citing Singer, 63 F.3d at 119); Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 255 (S.D.N.Y 1992) ("the veracity of citizen complainants who are the victims of the very crime they "REPORTED TO THE POLICE IS ASSUMED"), aff'd 993 F.2d 1534 (2d Cir 1003); Breitbard v. Mitchell, 390 F.Supp, 2d 237, 245 (E.D.N.Y. 2005) (citations omitted) (" a crime victim's unequivocal identification of a suspect in a police complaint provides probable cause for an arrest, so long as a so long as the arresting officer's belief in the complaint's allegations was reasonable."). " Unless there are '" circumstances that raise doubt as to the victim's veracity," a victim's report of a crime is generally enough, by itself, to establish probable cause.'" Jean v. City of New York, 09 Civ. 801 (RJD), 2011 U.S Dist. LEXIS 110954, at *12 (E.N.D.Y. Sept 22, 2011) (quoting Koester v. Lanfranchi, 288 Fed. Appx. 764 (2d Cir. 2008). The requirements for the veracity of a report are relatively minimal. '"[W]hen a " victim precisely identifies the alleged perpetrator of a crime an there is independent corroborative evince to support at lease some of the victim's assertions, a person of reasonable caution is warranted in believing that an offense has been committed by the alleged perpetrator.'" Id. at *12-13 (citations omitted). Moreover , "[A] variety of circumstances might corroborate a putative victim's veracity ......such....as (1) the officer's observation of the putative victim's physical injuries, (2) the level of detail and consistency in the putative victim's description of events, [or] (3) the putative victim's identification of the plaintiff by name and physical description." Id. at *13 (internal citations and quotations omitted).

Here, the Criminal Complaint signed by defendant Detective Chavers states that the basis of Chavers information against plaintiff was provided by a complaining witness named Tyrone Jordan. "POLICE OFFICER DETECTIVE CHAVER'S" made false statements. See plaintiffs Exhibit F also, See Defendant's 56.1 St. ¶ 26. Exhibit F) On August 22, 2007, a person by the name of Tyrone Jordan was shot one time in the abdomen in front of 315 Sutter avenue in Brooklyn. Id. at ¶¶ 7; 26. Later that day Detective Chavers went to Brookdale Hospital to see the victim Tyrone Jordan. (as Chavers stated in his grand jury testimony) ACCORDING TO PROSECUTION'S GRAND JURY SYNOPSIS SHEET PREPARED BY ADA JOSHUA CHARLTON, DETECTIVE CHAVERS ATTEMPTED TO INTERVIEW TYRONE JORDAN AT THE HOSPITAL, [B]UT COMPLAINANT TYRONE JORDAN WOULD NOT COOPERATE (See plaintiff's Exhibit C ) referring to ¶ 7,9,10 11(Defendants 56.1 St.) So with Tyrone Jordan's non cooperation Chavers stepped out of bounds of his official capacity and became the complainant. Defendant Chavers wasn't given sufficient evidence from complainant victim Tyrone Jordan that plaintiff did in fact shoot the victim. Chavers now conspired with reckless disregards for the truth to maliciously prosecute plaintiff by initiating a false arrest and presenting false statements from victim to a judge in order to feign probable cause for an arrest warrant. Plaintiff contends that the arrested warrant was obtained through conspiracy, fraud and misleading information. In addition, the information Detective Chavers received from other supposedly eye witness didn't sufficiently corroborates " Jordan's " account of the incident for the purpose of establishing probable cause

because Detective Chavers never received a statement from Jordan. Tyrone jordan was non cooperative with Chavers his first an only encounter with the victim at Brookdale Hospital. Supposedly, one witness identified plaintiff as the shooter in a photographic line up on the day of the shooting. Id. at ¶¶ 12-15. That witness, Broderick Nesbitt, supposedly identified plaintiff as the individual in position " 1" of the array on august 22, 2007 at 4:27 pm at the 73 rd station house. [B]ut Broderick Nesbitt's testifying statement at the grand jury was he was coming out of his building at 4:40 and he saw the incident was going on in front of 315 Sutter ave. Also Broderick's grand jury statement impeached Chavers first initial statement he took from Broderick on the day of the incident. SEE plaintiff Exbihit P an D . Nesbitt recounted to investigators his observations of the entire shooting, which supposedly matched the version provide by complainant but instead in matched the version falsely provided by Detective Chavers. As a result of the information provided by Broderick Detective Chavers had insufficient an non trust worthy information as well as misleading information and hearsay evidence that wouldn't warrant a reasonable officer in believing he had probable cause the plaintiff shot jordan. Accordingly, based on the fact that plaintiff was arrested pursuant to a Invalid Warrant, And no demonstrable probable cause existed for plaintiff's arrest based on no information provided by complaining witness, plaintiff respectfully submits that defendant Detective Chavers isn't entitled to summary judgement on plaintiff's false arrest claim.

POINT 2

PLAINTIFF'S MALICIOUS PROSECUTION CLAIM SHOULD'NT BE DISMISSED BECAUSE THERE WAS INSUFFICIENT PROBABLE CAUSE TO BELIEVE PLAINTIFF SHOT THE VICTIM

IN THE UNDERLYING CRIMINAL MATTER THAT PLAINTIFF WAS INDICTED BY A GRAND JURY

Detective Chavers is not entitled to summary judgement on plaintiff's malicious prosecution claim. Under New York law, in order to establish a claim of malicious prosecution, a plaintiff must prove : "(1) the initiation or continuation of a criminal proceeding in plaintiff's favor; (2) termination of the proceedings in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendants actions. " Murphy v. Lynn, 118 F. 3d 938, 947 (2d cir. 1997). In addition to these state law elements, a malicious prosecution claim brought under 1983 requires showing "a sufficient post arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. New York City Tranist Authority, 215 F.3d 208, 215 (2d Cir. 2000) "[T]here must be seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." Washington v. County of Rockland, 373 F.3d 310, 316 (2d Cir.2004) (citing Singer, 63 F.3d at 117). Here, plaintiff can show perversion of the legal process and a result his claims shall proceed.

First, Detective Chavers had no probable cause for the issuance of the criminal complaint against plaintiff. "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York......" Manganiello V.City of New York, 612 F.3d 149, 161-62 (2d cir. 2010) (first alteration in original) (quoting Savino v. City of New York, 331 F.3d at 72) (internal

quotation marks omitted ). As described in point 1, supra, there wasn't no probable cause to believe plaintiff shot Tyrone Jordan based on [N]o cooperation from complainant victim meant [N]o information provided by complainant victim ( See plaintiff Exhibit C ) only a third party witness, Nesbitt who's grand jury testimony contradicts Detective Chavers statement he initially took from Nesbitt on the day of the incident. Therefore, plaintiff can show that the criminal complaint against him was inappropriately procured by Detective Chavers.

Second, under New York law, a grand jury indictment creates a presumption of probable cause for purposes of defending against a malicious prosecution claim. See Green v. Montgomery, 219 F.3d 52, 60 (2d Cir 2000) (citing Marshall v. Sullivan, 105 F.3d 47, 54 n.2 (2d Cir.1996). For a plaintiff to succeed on a malicious prosecution claim after being indicted by a grand jury, he must demonstrate that the indictment was produced by "fraud, perjury, the suppression of evidence by the police or other police conduct undertaken in bad faith." Green, 219 F.3d at 60 (citing Bernard v. united States, 25 F.3d 98, 104 (2d Cir. 1994); see also, Morillo v. City of New York, 95 Civ. 2176 (JSM), 1997 U.S Dist. LEXIS 1665 at *15 (S.D.N.Y. Feb 20,1997) (citing Colon v. City of New York, 60 N.Y.2d 78, 82-83, 468 N.Y.S 2d 453 (1983)). Here, it is undisputed that a grand jury indicted plaintiff on March 20, 2008 on various chargers including Attempted Murder, see Defendant's 56.1 St. at ¶ 28, Through conspiracy, fraud ,an misleading information. At the time of the grand jury proceedings, the shooting victim again clearly was not cooperative Defendant Chavers ,continued to maliciously prosecute plaintiff by committing perjury, fraud an misleading the grand jury to believe that victim Tyrone Jordan had cooperated with Chavers at the hospital the day of the incident an victim told him plaintiff Jamaal Russ had in fact shot him.( See ¶ 28, plaintiff Exhibit H ). The grand jury presentation only consisted of a witness who also committed perjury, fraud an mislead the grand jury to believe he actually saw the shooting when in fact he didn't based on the witness initial statement he gave Chavers while his grand jury testimony is not clear where witness Broderick view the shooting at. A reasonably objective prosecutor would have known that no probable cause was evident. Defendant Chavers conspired to fashioned and corrupted evidence to feign cause to prosecute. Plaintiff contends that the information and / or indictment was obtained through conspiracy, fraud, and misleading information. During the trial Defense had moved for a mistrial on the bases of Defendant Chavers Once again tried to mislead the jury by testifying under oath that he'd spoken to the complainant, and the complainant had basically said that " Black " (The Defendant at that time Jamaal Russ) had shot him. See plaintiff's Exhibit L. Even tho the court DENIED that MOTION, however the judge promised to give further curative instruction to the jury if the Defense had requested it. Defendant Chavers maliciously prosecuted plaintiff without a accuser, probable cause an no legal evidence. Plaintiff was acquitted of all charges by a jury trial in Kings County on March 20, 2009. The venality of the defendant " shocks the conscience." And now plaintiff moves forward with evidence to show that the indictment was procured by fraud, perjury, or other bad faith misconduct. For these reasons, Plaintiff Jamaal Russ respectfully submits that Defendant Chavers summary judgment on plaintiff's claim for malicious prosecution be denied.


POINT 3

DETECTIVE CHAVERS IS NOT ENTITLED TO QUALIFIED IMMUNITY

---

Qualified immunity shields  government employees from civil liability where acting in his /her official capacity from suit for damages under 42 U.S.C 1983, " UNLESS THE EMPLOYEES

CONDUCT VIOLATED CLEARLY ESTABLISHED STATUTORY OR CONSTITUTIONAL RIGHTS OF WHICH A REASONABLE OFFICIAL SHOULD HAVE KNOWN." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1992). By its term, 1983 " creates a species of tort liability that on its face admits of no immunities." Imbler v. Pachman, 424 U.S. 409. its language is absolute and unqualified, and no mention is made of any privileges, immunities, or defenses that may asserted. Rather, the statute imposes liability upon " every person " (held in monell v. New York City Dept. of Social Services, 436 U.S. 658, to encompass municipal corporations) who, under color of state law or custom, " subjects, or causes to be subjected, any citizen of the United States.... to the deprivation of any rights, privileges or immunities secured by the constitution and laws." Owens v. City of Independence, 445 U.S. 622. Local governing bodies ( local officials sued in their official capacities) can be sued directly under 1983 for monetary, declaratory, and injunctive relief in situation with allegations of unconstitutional implements, polices, ordinance, regulation, or decision officially adopted or promulgated by those who edicts or ACT MAY FAIRLY BE SAID TO REPRESENT OFFICIAL POLICY. Id. Monell. Qualified immunity is " an immunity from suit rather than a mere defense to liability [....] ". Mitchell v . Forsyth, 472, U.S. 511, 526 (1985) . The question of qualified immunity is independent from the merit of the underlying action and must be examined independent of the underlying [...] claims. See Saucier v. Katz, 533 U.S. 194 (2001) Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Hargroves v. City of New York, No. 10-952, 2011 U.S. App. LEXIS 3598, at *10 (2d Cir. Fed. 22, 2011) ( internal quotations and citations omitted ). A police officer is entitle to immunity from suit for acts undertaken in his official capacity so long as "'(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would  have known, or (2) it was ' objectively reasonable' for him to believe that his actions were lawful  at the time of the challenged act. '" Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007).

Here, Detective Chavers is not entitled to qualified immunity for plaintiff's arrest based on Chavers knowingly, and intentionally, with reckless disregard for the truth, made a false statement in his criminal complaint / affidavit, an grand jury testimony (See Exhibit H and F). And that the allegedly false statement was necessary to the finding of probable cause an to obtain an arrest warrant an indictment through fraud, perjury, and misleading information. At the time Chavers obtained the warrant on March 13, 2008 which was 7 months and some days after the shooting Chavers Knowingly still have not spoken to complaint victim. Chavers had no reason to believe he was in pursuit to making  a lawful arrest on March 14, 2008. Intentional or reckless omissions of material information may be sufficient, and recklessness may be inferred where the omitted information was critical to the probable cause determination where an officer knows, or has reason to know, that he has materially mislead a magistrate, as where a material omission is intended to support a conclusion of probable cause, Detective Chavers shield of immunity shall be lost. See Golino v. City Of New Haven, 950 F.2d 864, 870 (2d Cir.1991). For the reasons set forth in point (1) supra, Detective Chavers received no information from victim Tyrone Jordan in regards to the Augusta 22, 2007 shooting incident. Instead he received and relied on witness Nesbitt, who didn't actually see the shooting " [B]ut stated he did. Nesbitt statement he told to Detective Chavers the day of the incident contradicts his grand jury testimony. As a result , there was not reasonable belief that probable cause did even existed for palintiff's  Jamaal Russ arrested an prosecution on chargers of Assault and Attempted Murder. Accordingly, Plaintiff Jamaal Russ respectfully submits that Detective Chavers is not entitled to qualified immunity on Plaintiff's claims for false arrest and malicious prosecution.

POINT 4

TO THE EXTENT THAT PLAINTIFF BRINGS ANY STATE LAW CLAIMS,

THEY SHOULD NOT BE BARRED BY HIS FAILURE TO COMPLY WITH CONDITIONS

PRECEDENT TO SUIT

To the extent plaintiff's allegations in the complaint be liberally construed to include claims brought under New York state law, such claims should not be dismissed for failure to comply with conditions precedent to suit pursuant to N.Y. Gen. Mun L. 50-e, and 50-i. under NewYork law, when suing the city or its employees, a notice of claim is required pursuant to New York General Municipal Law 50-e (1) (b). Gen Mun. L. 50-e and 50-i require that plaintiffs asserting state tort law claim within ninety days after the incident giving rise to the claim; and (2) commence the action within a year and ninety days from the date on which the cause of action accrues. The court held that N.Y. pub. Auth. Law 50-e required that a notice of claim be filed within 90 days after a claim arose against a public body, But if the claimant was unable, for specified reasons, to file the claim within 90 days she could obtain a discretionary leave to serve a late notice of claim upon the public body. See Elizabeth Barchet v. New York City Tranist Authority 20 N.Y.2d 1; 228 N.e.2d 361; 281 N.Y.S.2d 289; 1967 N.Y. LEXIS 1446. All tho Plaintiff has not yet filed a Notice of Claim in this matter based on having a specified reasons. Accordingly, because plaintiff was arrested on 3/14/08 which was seven months an eight days after the incident took place. plaintiff was already in non compliance with the 90 day statutory before Plaintiff was even arrested for such crime. Also the day of the incident on Augusta 22, 2007 to the day of plaintiff release after a trial on March 20, 2009 was a total of 19 months and 2 days. Plaintiff was now well over the Statutory where commencing the action within a year and ninety days from the date on which the cause of action accrues. Plaintiff Jamaal russ respectfully submits based on the reason set fourth that he is entitled to a leave to serve a late notice of claim. Plaintiff's state law claims should not be barred by his failure to comply with conditions precedent to suit for not moving in a timely fashion when in fact he was unable to do so.

CONCLUSION

For the foregoing reasons, Plaintiff Jamaal Russ respectfully request that the court dismiss the Defendants summary judgement in its entire and grant such other and further relief as this Court may deem just and proper.

JAMAAL RUSS

Pro se Plaintiff of College Park, GA

5812 Summerglen Lane Apt 2

(404) 259-5053

BY:_____

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

AFFIRMATION OF SERVICE

PLAINTIFFS OPPOSED MOTION FOR

DEFENDANTS SUMMARY JUDGEMENT

Jury Trial Demanded

10 CV 01370 ( JO) (SLT)

1. I Jamaal Russ, being the age of 18 or older and mailing address of 5812 Summerglen Lane College Park, Georgia 30349 apt 2

2. On this _____ 7 - 30 - 12 _____, I served the above - entitled via First Class Mail, to the following address:

THE CITY OF NEW YORK LAW DEPARTMENT
100 CHURCH STREET NEW YORK NY 10007

I declare under the penalty of perjury that on this _____ 7 - 30 - 12 _____, I will deliver these papers, to the above - listed via first Class Mail.

7-30-12

FRANCINE K STARKS
NOTARY PUBLIC
FULTON COUNTY, GEORGIA
MY COMM. EXPIRES 3/23/2013

# ReadyPost®

**From:** Jamaal Russ
5013 Summerglen Lane
College Park Ga.
30349. Apt # 2

CERTIFIED MAIL™

7012 0470 0002 0057 5635

**To:** Pro Se Clerk of the
Eastern District of New York
225 Cadman Plaza East
Brooklyn Ny. 11201

FILED

U.S. DISTRICT COURT E.D.N.Y
2012 AUG -3 PM 12:30



1000   11201



U.S. POSTAGE
PAID
ATLANTA, GA
JUL 30
12
AMOUNT
$5.85
00017523-10