UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JAMAAL RUSS,

                    Plaintiff,

        -against-

DARRELL CHAVERS (Police Officer 73 Pct.), *et al.*,

                   Defendants.
-------------------------------------------------------------------x

**<u>MEMORANDUM AND ORDER</u>**

10-CV-1370 (SLT)(JO)

**TOWNES, United States District Judge:**

       After a State-court jury acquitted him of attempted murder in the second degree and other

lesser offenses, plaintiff Jamaal Russ commenced this *pro se* action pursuant to 42 U.S.C. § 1983

against Darrell Chavers, a detective in the 73rd Precinct of the New York City Police Department

("NYPD"). Liberally construed, plaintiff's complaint alleges that defendant Chavers violated his

rights by falsely arresting plaintiff and maliciously prosecuting him in connection with an

August 22, 2007, shooting. Defendant now moves for summary judgment pursuant to Rule 56 of

the Federal Rules of Civil Procedure, principally arguing that there was probable cause for both

plaintiff's arrest and the subsequent criminal proceedings. For the reasons discussed below,

defendant's motion is granted and this action is dismissed.

## *BACKGROUND*

       On March 24, 2010, plaintiff commenced this action pursuant to 42 U.S.C. § 1983

against three Doe defendants, all of whom are alleged to be officers at the "73 pct." –

presumably, the NYPD's 73rd Precinct. Although plaintiff's one-page complaint does not

specify the constitutional or statutory right(s) violated by the defendants, the complaint alleges

that the defendants arrested him in mid-March 2008 in connection with the August 22, 2007,

shooting of one Tyrone Jordan and that he was acquitted on all charges after a trial in March

2009.  The complaint asserts that if the defendants "had conducted a proper investigation [he] would have never been falsely accused of a crime he did not commit." Complaint at ¶ III.

On April 1, 2010, Magistrate Judge James Orenstein issued an order pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), requesting that Corporation Counsel ascertain the names and addresses of the officers who investigated the Jordan murder and arrested plaintiff.  In a letter dated June 2, 2010, Assistant Corporation Counsel ("ACC") Lisa M. Richardson responded to Judge Orenstein's order by identifying defendant Chavers as lead investigator and arresting officer in plaintiff's case.  ACC Richardson admitted the possibility that "numerous officers and detectives could have participated in the investigation," but asserted that Corporation Counsel would be unable to identify the remaining two Does unless plaintiff could physically describe them and provide a fuller description of their actions.  Letter to Hon. James Orenstein from ACC Lisa M. Richardson, dated June 2, 2010, at 1-2.  The complaint was subsequently deemed amended to substitute defendant for John Doe #1.  *See* Civil Conference Minute Order dated April 19, 2011.  However, despite Judge Orenstein efforts to assist plaintiff in identifying the other Does, those defendants were never identified.

In the latter half of 2011, plaintiff requested permission to amend his complaint to add nine  defendants: the NYPD and its Commissioner; the State and City of New York; the Kings County District Attorney's Office; the District Attorney, Charles J. Hynes; and three of his assistants.  However, in a memorandum and order dated January 17, 2012, and filed January 19, 2012, this Court denied plaintiff's request, holding that it would be futile to permit plaintiff to amend his pleading in the manner he proposed.  *See Russ v. Chavers*, No. 10-CV-1370 (SLT)(JO), 2012 WL 170007, at *5 (E.D.N.Y.  Jan. 19, 2012).

On August 22, 2012, defendant filed the instant motion for summary judgment,

submitting a notice of motion, a Statement Pursuant to Local Civil Rule 56.1 ("Defendant's 56.1

Statement"), the Notice to Pro Se Litigant who Opposes Summary Judgment required by Local

Civil Rule 56.2 (the "56.2 Notice"), a Memorandum of Law in Support of the Motion

("Defendant's Memo"), and the Declaration of Special Assistant Corporation Counsel Joshua J.

Lax (the "Lax Declaration"), which attaches 20 exhibits.  Plaintiff has opposed this motion by

filing a single, 50-page document entitled, "Plaintiff's Memorandum of Law in Support of his

Opposed Motion for Defendant's Summary Judgment" ("Plaintiff's Opposition").  Although

plaintiff has not submitted a separate counter-statement pursuant to Local Civil Rule 56.1,

Plaintiff's Opposition includes a "Statement of Facts" which disputes some, but not all, of the

facts alleged in Defendant's 56.1 Statement and incorporates a dozen exhibits, some of which are

identical to exhibits attached to the Lax Declaration.  Since plaintiff was provided with the 56.2

Notice, which warned him of the consequences of his failure to provide evidence contradicting

the facts adduced by defendant, this Court deems those portions of Defendant's 56.1 Statement

which were not specifically controverted by plaintiff to be admitted for purposes of this motion.

*See* Local Civil Rule 56.1(c).

**The Facts**

Unless otherwise indicated, the following facts are undisputed.  On August 22, 2007, a

man named Tyrone Jordan was shot once in the abdomen in front of 315 Sutter Avenue,

Brooklyn.  Defendant's 56.1 Statement at ¶ 7.[1]  Jordan, who was not fatally injured, was taken to

---

[1]This Court will take judicial notice of the fact that 315 Sutter Avenue is one of three
apartment buildings comprising a New York City Housing Authority development known as the
Hughes Apartments.  The other two buildings are located at 301 and 335 Sutter Avenue.  *See*
http://gis.nyc.gov/nycha/im/wmp.do;jsessionid=08B68A894C865B4C9BD3ACDC3C647FF0?

Brookdale Hospital. Later that same day, defendant – the detective assigned to investigate to the case – went to the hospital to interview Jordan. *Id.* at ¶ 9.

The parties disagree about what, if anything, Jordan told defendant during that interview. Defendant claims that Jordan identified the shooter as a dark-skinned man named "Black," who was wearing a blue hoody at the time of the crime. *Id.* at ¶ 10. According to defendant, Jordan said he believed "Black" lived in 301 Sutter Avenue and that the shooting was motivated by a "feud" between that building and 315 and 335 Sutter Avenue – the other two buildings comprising the Hughes Apartments. *Id.* at ¶¶ 10-11.

Although defendant's account is substantiated by a Complaint Follow Up Report (or "DD-5") prepared the day after the interview, Lax Declaration, Ex. E, plaintiff claims that two other documents suggest that defendant's account is fabricated. First, plaintiff points to an undated, unsigned document entitled, "Grand Jury Synopsis Sheet," prepared by someone in the Kings County District Attorney's Office sometime after plaintiff's arrest on March 14, 2008. Plaintiff's Opposition, Ex. C. This document, which appears to summarize the evidence in the case, states, *inter alia*, "A/O interviewed the C/W in the hospital, but the C/W would not cooperate." *Id.*

Second, plaintiff points to an excerpt from defendant's grand jury testimony, which is included in Plaintiff's Opposition as Exhibit H. In that excerpt, defendant testified that he spoke to Jordan at the hospital on the day of the shooting and that Jordan told him what happened. However, defendant did not elaborate further on his conversation with Jordan. Plaintiff claims

that it is, therefore, "very unclear if Defendant ever obtained a statement from [Jordan]." Plaintiff's Opposition at 4.[2]

Later that same day, defendant interviewed Broderick Nesbitt, who claimed to be an eyewitness to the shooting. Defendant's 56.1 Statement at ¶ 12. Defendant, relying on a DD-5 prepared the day after the interview, maintains that Nesbitt said he saw "Black," wearing a blue hoody, come around the victim and shoot him once. *Id.* at ¶ 13. Defendant claims that he then showed Nesbitt a photo array containing a picture of plaintiff, and that Nesbitt identified plaintiff as "Black." *Id.* at ¶¶ 14-15.

Plaintiff does not dispute that Nesbitt identified him. However, plaintiff notes that in Nesbitt's grand jury testimony – excerpts of which are included in Plaintiff's Opposition as Exhibit D – Nesbitt identified the shooter as "Jamal Russ," not "Black." Plaintiff's Opposition at 4. Plaintiff contends that this grand jury testimony "contradicts what Nesbitt's statement was to Detective Chavers." *Id.*

Plaintiff also implies that the record contains contradictions relating to the photographic identification. Plaintiff notes that the identification procedure took place at 4:27 p.m. on August 22, 2007, *see* Plaintiff's Opposition, Ex. E and Lax Declaration, Ex. G, and asserts that Nesbitt told the grand jury that the incident occurred at 4:40 p.m. *Id.* at 5. However, in the excerpt of Nesbitt's grand jury testimony which is included in Plaintiff's Opposition as Exhibit D, Nesbitt testified that the shooting occurred at "[a]pproximately 2:40 p.m." – not 4:40 p.m. *Id.* at 15.

---

[2]Since the pages of Plaintiff's Opposition are not numbered, this Court will cite to the page numbers assigned by the Court's Electronic Case Filing ("ECF") System. Accordingly, page 4 denotes the first page of the "Statement of Facts" in Plaintiff's Opposition, which is designated page 4 of 50 by ECF.

On August 23, 2007, defendant prepared an "I-Card" (or "investigation card") for plaintiff. Defendant's 56.1 Statement at ¶ 16.[3] In late January 2008, the NYPD was advised that plaintiff had been arrested on unrelated charges in Orange County. *Id.* at ¶ 20. Defendant promptly wrote a letter to the Orange County Jail Records Unit, asking that plaintiff be detained even if the Orange County charges were dismissed. *Id*. at ¶ 21.

On March 13, 2008, defendant swore to a Criminal Complaint in New York City Criminal Court, Kings County. *Id.* at ¶ 26; Lax Declaration, Ex. P. In that complaint – which charged defendant with attempted murder in the second degree and lesser offenses in connection with the shooting of Tyrone Jordan – defendant attested to the fact that Jordan told him that plaintiff was the shooter. Lax Declaration, Ex. P. Based on the Criminal Complaint, Criminal Court Judge John H. Wilson issued a warrant for plaintiff's arrest. Defendant's 56.1 Statement at ¶ 26; Lax Declaration at Ex. O.

Plaintiff does not deny that Judge Wilson issued the warrant, but asserts that it was obtained through "Conspiracy, Fraud, [and] Misleading Information." Plaintiff's Opposition at 5. Alluding to the Grand Jury Synopsis Sheet, plaintiff asserts that defendant attestations about having received information from Jordan were untrue, stating:

> [Defendant] submitted false statements from the complaining victim to Judge John Wilson to obtain an Arrest Warrant. It is very unclear how did Chavers retrieve such statement when the prosecution was unaware [that] . . . Mr. Jordan was even cooperative with Chavers.

*Id.*

---

[3]An "investigation card" is used by members of the NYPD to alert other members that there is probable cause for an individual's arrest. *See People v. Jones*, 24 Misc.3d 1229(A), 899 N.Y.S.2d 62 (Table), 2009 WL 2357744, at *1, n. 3 (N.Y.Sup. July 31, 2009).

On March 20, 2008, plaintiff was indicted by a Kings County grand jury on eight charges: attempted murder in the second degree, attempted assault in the first degree, assault in the second and third degree, and four weapon possession offenses. Defendant's 56.1 Statement at ¶ 28; Lax Declaration, Ex. S. Although plaintiff notes that the District Attorney's Certification pursuant to N.Y. C.P.L. §180.80(2)(a) – incorporated into Plaintiff's Opposition as Ex. G and attached to the Lax Declaration as Exhibit R – is "not notarized," Plaintiff's Opposition at 5, plaintiff does not argue that he was not indicted. Rather, plaintiff argues that this indictment was procured, in part, through false statements by defendant, who told the grand jury that Jordan had told him what happened. *Id.* However, the excerpt of defendant's grand jury testimony which is attached to Plaintiff's Opposition as Exhibit H does not include any testimony regarding the substance of Jordan's statement to defendant.

Plaintiff was tried before Justice John G. Ingram in the Supreme Court of the State of New York, Kings County, in March 2009. According to Supreme Court records attached to the Lax Declaration as Exhibit T, eight witness testified for the prosecution, including Nesbitt, defendant, and Jordan, who was "[b]rought in via 'Material Witness Order.'" Lax Declaration, Ex. T, at NYC 89. At trial, defendant testified that Jordan had told him that "Black" was the shooter, prompting defense counsel to move for a mistrial. Justice Ingram denied the motion, but offered to give a curative instruction if the defense requested it. *Id.* On March 20, 2009, plaintiff was found not guilty of all charges. *Id.* at NYC 93; Defendant's 56.1 Statement at ¶ 30.

About one year later, plaintiff commenced this action, alleging, *inter alia*, that if the officers of the 73rd Precinct "had conducted a proper investigation [he] would have never been falsely accused of a crime he did not commit." Complaint at ¶ III. At his deposition – excerpts

of which are attached to the Lax Declaration as Exhibit L – plaintiff expanded on these allegations. Plaintiff testified that he has a brother, Jamell Russ, who is about 13 months older than plaintiff and looks very much like him. Lax Declaration, Ex. L, at 9, 57. Jamell's nickname is "Black," but people mistakenly call plaintiff by that nickname. *Id.* at 58, 71-72. Moroever, " everybody," even people who have been "around [plaintiff] for years," confuses plaintiff for his brother. *Id.* at 71. According to plaintiff, when Jordan referred to "Black," he was not referring to plaintiff but may have been referring to plaintiff's brother. *Id*. at 85. In his motion papers, plaintiff asserts that defendant could have ascertained this fact, but failed to do so because he never conducted an adequate investigation. Plaintiff's Opposition at 6.

### *Defendant's Arguments for Summary Judgment*

Defendant now moves for summary judgment. His motion characterizes this case as an "action pursuant to 42 U.S.C. § 1983 . . . alleging violations of [plaintiff's] constitutional rights under the Fourth, Fifth and Fourteenth Amendments, and under any applicable state laws." Defendant's Memo at 1. Defendant's Memo further asserts that plaintiff is alleging "that he was falsely arrested and maliciously prosecuted" in connection with the August 22, 2007, shooting of Tyrone Jordan. *Id.* In his opposition papers, plaintiff does not take issue with this characterization of his complaint. Indeed, plaintiff incorporates defendant's characterization into his own Preliminary Statement. Plaintiff's Opposition at 2.

Defendant's Memo raises four points. In the first point, defendant argues that plaintiff's false arrest claim must be dismissed because there was probable cause for plaintiff's arrest. This point encompasses two separate arguments, each predicated on different facts. First, defendant asserts that "it is undisputed that defendant . . . obtained an arrest warrant signed by the

Honorable John H. Wilson in . . . New York City Criminal Court, Kings County, authorizing plaintiff's arrest," and that this warrant creates "a presumption of probable cause." Defendant's Memo at 5. Second, defendant argues that he had probable cause to arrest because plaintiff was identified as the shooter by both the victim and by an eyewitness who selected plaintiff's picture from a photo array. *Id.* at 7.

The second point advances similar arguments with respect to plaintiff's malicious prosecution claim. First, defendant asserts that plaintiff was indicted by a grand jury and that this indictment "creates a presumption of probable cause for purposes of defending against a malicious prosecution claim." *Id.* at 9. Second, defendant argues that there was probable cause for maintaining criminal proceedings against plaintiff and that the existence of probable cause is a complete defense to plaintiff's malicious prosecution claim. *Id.*

In the third point, defendant argues that he is entitled to qualified immunity because plaintiff was identified as the perpetrator by both the victim and an eyewitness prior to the arrest. In the fourth point, defendant argues that, to the extent plaintiff is bringing any state law claims, these claims are barred by plaintiff's failure to file a notice of claim prior to commencing this action.

***Plaintiff's Opposition***

Plaintiff's Opposition addresses each of defendant's points. With respect to the first of the two arguments raised in defendant's first point, plaintiff concedes that defendant obtained an arrest warrant from Judge Wilson on March 13, 2008. Plaintiff's Opposition at 2. However, plaintiff contends that defendant obtained the arrest warrant "through conspiracy, fraud, false statements from [the] victim, and misleading information." *Id*. at 42.

To support of this argument, plaintiff relies primarily on that portion of the Grand Jury Synopsis Sheet which states,"A/O interviewed the C/W in the hospital, but the C/W would not cooperate." Assuming that both the Grand Jury Synopsis Sheet and the statement contained within it are accurate, plaintiff asserts that because defendant "wasn't given sufficient evidence from . . . [the] victim . . . that plaintiff did in fact shoot the victim," defendant fabricated that portion of the Criminal Complaint in which he stated that Jordan told him that defendant was the shooter. *Id*. at 43. In addition, plaintiff asserts that defendant inappropriately "stepped out of [the] bounds of his official capacity and became the complainant." *Id.*

Plaintiff also attempts to controvert the second of the two arguments raised in defendant's first point by questioning the credibility of Nesbitt, whom plaintiff refers to as the "witness [who] . . . supposedly identified plaintiff." *Id*. at 44. Plaintiff asserts that Nesbitt testified before the grand jury that "he was coming out of his building at 4:40 and he saw the incident was going on in front of 315 Sutter [A]ve." *Id*. Plaintiff claims that this account is inconsistent with the fact that Nesbitt identified plaintiff's photograph at 4:27 p.m. on August 22, 2007. *Id.*

With respect to the second point raised in defendant's motion, plaintiff concedes that "it is undisputed that a grand jury indicted plaintiff on March 20, 2008, on various chargers [*sic*] included Attempted Murder." *Id.* at 45. However, plaintiff asserts that "the indictment was procured by fraud, perjury, or other bad faith misconduct." *Id.* Plaintiff asserts that defendant "misle[d] the grand jury to believe that [the] victim . . . had cooperated with Chavers at the hospital" and had identified plaintiff as the perpetrator. *Id.* Plaintiff also asserts that "[t]he grand jury presentation only consisted of a witness who . . . mislead [*sic*] the grand jury to

believe he actually saw the shooting when in fact he didn't," and that a "reasonably objective prosecutor would have known that no probable cause was evident." *Id.*

Plaintiff's response to the third point raised in defendant's motion relies on the same arguments plaintiff advances with respect to the first two points. Plaintiff asserts that defendant knowingly made false statement in both the Criminal Complaint and in his testimony before the grand jury. *Id.* at 46. Specifically, plaintiff asserts that defendant received no information from Jordan concerning the shooting and relied on statements made by Nesbitt, who never saw the shooting. *Id.*

With respect to the fourth point raised in defendant's motion, plaintiff concedes that he never filed a notice of claim, but argues that he is "entitled to . . . leave to serve a late notice of claim" because he was unable to do so within the statutory 90-day limits. *Id.* at 47. Plaintiff asserts that he has "specified reasons" for missing the deadlines, but states only that he was arrested on March 14, 2008, and not released until March 20, 2009. However, plaintiff does not specify any state law claims, stating, "To the extent plaintiff's allegations in the complaint [can] be liberally construed to include claims brought under New York state law, such claims should not be dismissed." *Id.*

### DISCUSSION

### I.    *Summary Judgment Standard*

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns

facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotation omitted; brackets added).

Initially, the moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must then "set forth specific facts showing that there is a genuine issue for trial." *Western World Ins. Co. v. Stack Oil, Inc*., 922 F.2d 118, 121 (2d Cir. 1990) (internal quotation omitted); *see* Fed. R. Civ. P. 56(e); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation and brackets omitted). Moreover, a party cannot sustain its burden in opposing summary judgment by relying on inadmissible hearsay evidence. *See G.I. Home Developing Corp. v. Weis*, No. 11-4359-cv, 2012 WL 4679331, at *3 (2d Cir. Oct. 4, 2012) (summary order).

When evaluating a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all ambiguities in his favor. *See Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also Swartz v. Insogna*, 704 F.3d 105, 109 (2d Cir. 2013). Additionally, a *pro se* party's submissions are to be read "liberally, and [a court] will interpret them to raise the strongest arguments that they suggest." *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). No genuine triable factual issue exists

when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996). "If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and brackets omitted).

## II.     *False Arrest*

A § 1983 claim for false arrest derives from the right to be free from unreasonable searches and seizures, including the right to be free from arrest absent probable cause. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). In order to prove a claim of false arrest, a plaintiff must show: "(1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). The existence of probable cause gives an officer the privilege to arrest and "is a complete defense to an action for false arrest" brought under § 1983. *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Weyant*, 101 F.3d at 852).

Probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to cause a person of reasonable caution to believe that the person to be arrested has committed or is committing a crime. *Weyant*, 101 F.3d at 852; *see Ackerson*, 702 F.3d at 19. The Second Circuit has described the process for determining whether probable cause exists as follows:

> [C]ourts must consider those facts available to the officer at the time of the arrest and immediately before it, as probable cause does not require absolute certainty. Courts should look to the totality of the circumstances and must be aware that probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules. Nevertheless, an officer may not disregard plainly exculpatory evidence.

*Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotations, brackets, emphasis, and citations omitted); *see Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012). However, "[w]hen information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Curley v. Vill. of Suffern*, 268 F.3d 65, 68 (2d Cir. 2001) (internal citation omitted).

Probable cause requires only a "probability or substantial chance" that a crime has taken place or is taking place. *United States v. Bakhtiari*, 913 F.2d 1053, 1062 (2d Cir. 1990). "[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful. It is therefore of no consequence that a more thorough or more probing investigation might have cast doubt upon the situation." *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989) (internal quotations omitted). Generally, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y. City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *Curley*, 268 F.3d 65, 70 (internal quotation marks and brackets omitted).

It is also well established that an arrest pursuant to a valid arrest warrant issued by a neutral magistrate is presumed reasonable because such a warrant may be issued only upon a showing of probable cause. *See Fabrikant*, 691 F.3d at 214; *Walczyk v. Rio*, 496 F.3d 139, 155-

56 (2d Cir. 2007). "A plaintiff who argues that a[n arrest] warrant was issued on less than probable cause faces a heavy burden." *Fabrikant*, 691 F.3d at 214 (quoting *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991)). In order to sustain this burden, a plaintiff must show that "the officer submitting the probable cause affidavit 'knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit' or omitted material information, and that such false or omitted information was 'necessary to the finding of probable cause.'" *Soares v. State of Conn.*, 8 F.3d 917, 920 (2d Cir. 1993) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870-71 (2d Cir. 1991)).

In this case, plaintiff concedes that defendant obtained an arrest warrant from Judge Wilson on March 13, 2008. Plaintiff's Opposition at 2. Plaintiff contends, however, that defendant obtained the arrest warrant "through conspiracy, fraud, false statements from [the] victim, and misleading information." *Id*. at 42. In support of this argument, plaintiff principally relies on that portion of the "Grand Jury Synopsis Sheet," which states that the "A/O interviewed the C/W in the hospital, but the C/W would not cooperate." Plaintiff asserts that this statement contradicts representations made by defendant in the Criminal Complaint, in which defendant swore that he had been informed by the victim that plaintiff was the shooter, and that this contradiction establishes that the arrest warrant was obtained on the basis of false information. Plaintiff also finds support for his theory in the fact that defendant, not Jordan, swore to the Criminal Complaint and in the fact that defendant did not offer testimony before the grand jury as to the substance of Jordan's statements to him.

Plaintiff also relies on a colloquy which occurred during his trial after defendant testified that Jordan had identified plaintiff as the shooter. Defense counsel moved for a mistrial and the

trial judge, while denying that motion, offered a curative instruction. Plaintiff assumes that defense counsel requested a mistrial and that the judge offered a curative instruction because defendant's testimony was false.

Plaintiff's proof, however, does not suffice to meet the heavy burden of showing that defendant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the Criminal Complaint which served as the basis for issuing the arrest warrant. First, even assuming, *arguendo*, that the Grand Jury Synopsis Sheet was itself admissible as a business record and that defendant was the "A/O" referenced therein, the statement asserting that Jordan failed to cooperate was not based on the personal knowledge of the employee of the District Attorney's Office who drafted the form. Accordingly, that statement, if offered to establish that Jordan did not cooperate with defendant, would be inadmissible hearsay which cannot be used to sustain plaintiff's burden. *See Weis*, 2012 WL 4679331, at *3.

Second, the facts that defendant swore to the Criminal Complaint and that he did not tell the grand jury about the substance of Jordan's statements to him do not imply that Jordan did not cooperate. Criminal Complaints are frequently sworn to by arresting officers, who swear to statements made to them by victims. *See*, *e.g.*, *LoFaso v. City of New York*, 66 A.D.3d 425, 426, 886 N.Y.S.2d 385, 387 (N.Y. App. Div. 2009). Moreover, defendant could not testify concerning Jordan's statements to him because hearsay statements generally cannot be presented to the grand jury. *See* N.Y. C.P.L. §190.30.

Third, plaintiff misapprehends the rationale behind defense counsel's motion for a mistrial. Defendant's testimony regarding what Jordan told him at the hospital was inadmissible hearsay and highly objectionable regardless of whether that testimony was accurate.

16

Accordingly, neither the fact that defense counsel moved for a mistrial on the basis of this testimony nor the fact that the trial court offered a curative instruction implies that defendant's testimony regarding Jordan's statement was untruthful.

Moreover, even assuming that defendant fabricated his account of having spoken to Jordan in the hospital, the undisputed facts establish that defendant had probable cause to arrest plaintiff. Defendant has adduced evidence to show that on the afternoon of August 22, 2007, Broderick Nesbitt, an eyewitness to the shooting, identified plaintiff as the perpetrator from a photo array. *See* Defendant's 56.1 Statement at ¶ 14 (citing to Lax Declaration, Ex. F). Plaintiff has not adduced any evidence to the contrary. Rather, plaintiff asserts that Nesbitt told the grand jury that the shooting occurred at 4:40 p.m. – about two hours after the shooting actually occurred – and argues that this discrepancy creates a reason to question Nesbitt's accuracy and veracity.

Plaintiff's argument is flawed in three respects. First, contrary to plaintiff's assertions, Nesbitt did *not* tell the grand jury that the shooting occurred at 4:40 p.m. In the excerpts of Nesbitt's grand jury testimony which are attached to Plaintiff's Opposition as Exhibit D, Nesbitt testified that the shooting took place at "[a]pproximately 2:40 p.m." Second, even if Nesbitt had testified in the manner which plaintiff alleges, there is no evidence to suggest that Nesbitt testified prior to plaintiff's arrest or that defendant was aware of the substance of Nesbitt's grand jury testimony. Third, even assuming that Nesbitt had testified prior to the arrest, in the manner plaintiff alleges, and that defendant knew the substance of his testimony, Nesbitt's mistake regarding the time of the incident would not mandate the conclusion that Nesbitt was untruthful in identifying plaintiff as the shooter.

### III.     *Malicious Prosecution*

To state a § 1983 claim for malicious prosecution, a plaintiff must allege the four elements of malicious prosecution under New York state law.  *See Rohman v. N.Y. City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).  The elements of malicious prosecution under New York state law are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotations omitted); *see Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004), *Broughton v. State of New York*, 37 N.Y.2d 451, 457, 457, 373 N.Y.S.2d 87, 94 (N.Y. 1975).  In addition, "[a] plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must . . . show some deprivation of liberty consistent with the concept of 'seizure.'"  *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995); *see Rohman*, 215 F.3d at 215.

"The existence of probable cause is a complete defense to a claim of malicious prosecution in New York, . . . and indictment by a grand jury creates a presumption of probable cause."  *Manganiello*, 612 F.3d at 161-162 (internal quotations, citation and brackets omitted).  "That presumption may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  *Id.* at 162 (internal quotations omitted); *see Savino*, 331 F.3d at 72.  Thus, "[w]here there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have 'lied in order to secure an indictment,' and 'a jury could reasonably find that the indictment was secured through bad faith or perjury,' the presumption of probable

cause created by the indictment may be overcome." *Manganiello*, 612 F.3d at 162 (quoting *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003)).

In this case, it is undisputed that plaintiff was indicted by a grand jury.  A copy of indictment is attached to the Lax Declaration as Exhibit S and a copy of the District Attorney's written certification pursuant to N.Y. C.P.L. 180.80(2)(a), stating that a grand jury voted an indictment against plaintiff on March 20, 2008, is attached both to the Lax Declaration as Exhibit R and to Plaintiff's Opposition as Exhibit G.  Although plaintiff notes that the District Attorney's certification is "not notarized," Plaintiff's Opposition at 5, plaintiff does not cite to any authority for the proposition that such a certification must be notarized or that defects in the certification impact the validity of the indictment.  Indeed, plaintiff does not – and cannot – argue that he was not indicted.

Rather, plaintiff attempts to argue that his indictment was procured "[t]hrough conspiracy, fraud, an[d] misleading information."  Plaintiff's Opposition at 45.  According to plaintiff, defendant misled the "the grand jury to believe that . . . Jordan . . . had cooperated with [defendant] at the hospital the day of the incident . . . [and] told him plaintiff . . . had in fact shot him."  *Id.*  In addition, plaintiff asserts that Nesbitt "committed perjury, fraud an[d] mislead [*sic*] the grand jury to believe he actually saw the shooting when in fact he didn't."  *Id.*  Plaintiff implies that Nesbitt's grand jury testimony was inconsistent with what he told the police immediately after the shooting and that it is unclear from Nesbitt's grand jury testimony "where witness [Nesbitt] view[ed] the shooting."  *Id.*

Plaintiff's arguments, however, are not substantiated by the evidence included in plaintiff's own papers.  First, the excerpt from defendant's grand jury testimony which is

included in Plaintiff's Opposition as Exhibit H indicates that defendant went to Brookdale Hospital to interview Jordan on the day of the shooting. While defendant testified that Jordan told him what happened, defendant did not tell the grand jury that Jordan said plaintiff had shot him. Plaintiff has not adduced any evidence – other than the inadmissible hearsay included in the Grand Jury Synopsis Sheet – to prove that defendant's grand jury testimony was inaccurate.

Second, there is nothing to substantiate plaintiff's assertion that Nesbitt perjured himself before the grand jury. In the excerpt from Nesbitt's grand jury testimony which is included in Plaintiff's Opposition as Exhibit D, Nesbitt testified that at approximately 2:40 p.m., he observed "Jamal Russ" "over at 315 Sutter." As Nesbitt watched from a distance of "about 20 feet," Jamal Russ shot an individual whose name Nesbitt did not know, but who lived in Nesbitt's building: 335 Sutter Avenue. Nesbitt expressed some uncertainty as to where the bullet struck the individual, saying, "I seen Jamal Russ shoot the individual in the back or the side. I can't say, you know, where the actual shot at." However, Nesbitt testified that the two men were "face-to-face" at the time of the shooting and that he observed the victim, bleeding from his "left-hand side," run towards 335 Sutter and "collapse on the side of [the] building."

That testimony was consistent in most respects with the account that Nesbitt gave defendant and another detective at the 73rd Precinct on the evening of August 22, 2007. According to a police report which is incorporated into Plaintiff's Opposition as Exhibit P, Nesbitt was an employee of the New York City Housing Authority and, at the time of the shooting, was assigned to 335 Sutter Avenue. While standing in front of that building, Nesbitt observed someone he identified as "Black" approach two men who were standing in front of 315 Sutter Avenue. Nesbitt identified the two men as "Tyron" and "BJ," and described "BJ" as a 5'

3" black male, 16-to-20 years old, wearing a white hoody. As Nesbitt watched, "Black" swung around in front of the man Nesbitt knew as Tyron and shot him once.

The police report further indicates that, after Nesbitt provided this account, he viewed a photo array and identified photo #1 as "Black," "the shooter." It is undisputed that plaintiff's photo appears as photo #1 in that array, which is incorporated into Plaintiff's Opposition as Exhibit E and to the Lax Declaration as Exhibit G. Accordingly, although Nesbitt may not have told the detectives that the shooter was "Jamal Russ," it is beyond dispute that he identified plaintiff as "Black," the shooter, through his selection of plaintiff's photograph.

Accordingly, whatever contradictions existed between Nesbitt's statements to the police on the afternoon of the shooting and Nesbitt's grand jury testimony were minor, and insufficient to establish perjury on his part. To be sure, the evidence suggests that Nesbitt may have mistaken plaintiff for his brother, "Black." However, proof that Nesbitt may have been mistaken would not establish that Nesbitt perjured himself before the grand jury. Indeed, plaintiff testified at his deposition that "everybody" confused him for his brother, even people who had been "around [him] for years." Lax Declaration, Ex. L, at 71.

## IV. *Qualified Immunity and State Law Claims*

Because this Court concludes that there was probable cause to arrest plaintiff and to maintain criminal proceedings against him, there is no need to address defendant's qualified immunity argument. Moreover, because plaintiff does not allege any state law claims – either in his complaint or in Plaintiff's Opposition – there is no need to address defendant's argument that such claims are barred by plaintiff's failure to file a notice of claim prior to commencing this action.

## *CONCLUSION*

For the reasons set forth below, defendant's motion for summary judgment is granted and this action is dismissed.  The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff and, upon entry of judgment, to close this case.

**SO ORDERED.**

_____/s/_____

SANDRA L. TOWNES
United States District Judge

Dated: March 29, 2013
        Brooklyn, New York